Joseph T. LaBELLE, George Blanchard, Plaintiffs-Appellees,

v.

McCAULEY INDUSTRIAL CORPORATION, Defendant-Appellant.

No. 80–1574.

United States Court of Appeals, First Circuit.

Argued Jan. 6, 1981.

Decided May 21, 1981.

Rehearing Denied June 15, 1981.

Stephen C. Fulton, Boston, Mass., with whom Robert Fulton, Boston, Mass., on brief, for defendant-appellant.

William C. Flanagan, Springfield, Mass., for plaintiffs-appellees.

· Before MARKEY, Chief Judge,* CAMPBELL and BOWNES, Circuit Judges.

MARKEY, Chief Judge.

McCauley Industrial Corporation (McCauley) appeals from a judgment of the District Court of Massachusetts denying its motion for judgment notwithstanding the verdict and holding it liable to Joseph La-Belle and George Blanchard (Plaintiffs) in the amount of $10,000 for negligently failing to warn Plaintiffs of a defect or dangerous condition in its product. We affirm.

## Background

On July 23, 1972, as the pilot advanced the throttle and began his take-off roll, a blade of his starboard propeller broke off and sliced into the fuselage. The pilot was able to abort the take-off without injury to any person.[1] Plaintiffs sued McCauley, the propeller manufacturer.[2]

Plaintiffs had purchased the involved 1964 Cessna 310–I twin engine aircraft on March 15, 1971. At that time, a dual-blade propeller manufactured by McCauley before April 1964 was attached to the right engine. McCauley had not installed the propeller. A tag attached to the engine log book showed that the propeller had been "repaired and inspected in accordance with Civil Air Regulations and was Found Airworthy for return to service" on August 21, 1969 by New England Propeller Service, Inc. (New England), an official Federal Aviation Administration (FAA) certified propeller repair station, which had overhauled the propeller.

FAA regulations (14 C.F.R.) require certified repair stations to maintain a current file of manufacturer's service manuals, overhaul instructions, and service bulletins, and to perform maintenance in conformity with those documents and with current

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Neither negligent aircraft operation nor weather condition is claimed as a factor.

2. Plaintiffs also sued New England Propeller Service, Inc., which had overhauled the propeller and against which default judgment was entered on May 24, 1977.

FAA Airworthiness Directives (AD's). The latter provide notice, in the Federal Register, of unsafe conditions in products. They also order corrective action. Aircraft owners must comply with all applicable AD's.

Following the take-off accident, McCauley examined propeller and engine parts and determined that a required rounding and polishing operation had not been performed when the propeller was overhauled. As a result, fatigue cracks had formed inside the propeller hub, causing it to fail. According to McCauley's chief engineer, the accident would not have occurred had the rounding and polishing operation been performed.

Having determined between 1962 and 1964 that sharp corners may lead to cracks, McCauley revised its Service Manual applicable to Plaintiffs' propeller in September 1965 to require at overhaul removal of sharp corners from inside the hub by a rounding and polishing operation. Between September and November, 1965, McCauley advised repair stations that the manual had been revised. McCauley says New England was among those so advised.

Regarding propellers different from that of Plaintiffs, McCauley issued Service Bulletin No. 69 on April 22, 1968. That bulletin acknowledged that hubs of those propellers were found with cracks and that some repair stations had not performed the rounding and polishing operation. The FAA issued an AD directing the rounding and polishing operation on the propellers covered by Service Bulletin No. 69. There is no evidence that McCauley requested a similar FAA directive applicable to Plaintiffs' propeller or that it otherwise communicated in any manner with the FAA concerning Plaintiffs' type propeller.

McCauley did not issue a Service Bulletin on Plaintiffs' propeller until November 6, 1970 (after New England's overhaul), when it issued Service Bulletin No. 88. That bulletin called for destruction and replacement of the propeller hub.

Plaintiffs, in their complaint filed August 17, 1973, alleged that McCauley negligently failed to warn them of the dangerous condition of the propeller, and that McCauley breached express and implied warranties.[3]

The failure-to-warn claim was tried before a jury which returned the $10,000 verdict for Plaintiffs.

The Court denied McCauley's motion for judgment notwithstanding the verdict on August 1, 1980, and entered judgment for Plaintiffs. On August 27, 1980, McCauley filed a notice of appeal.

*Issue*

■ The dispositive issue is whether there is evidence from which a jury could find that McCauley negligently failed to warn Plaintiffs of a defect or dangerous condition in its product.[4]

OPINION

■ McCauley says the only evidence offered by Plaintiffs respecting a defect or dangerous condition was Interrogatory No. 19 and the answer thereto, and that Plaintiffs are therefore bound by that answer. Interrogatory No. 19 read:

At any time prior to July 23, 1972, did the defendant take any actions or precautions whatsoever to avert or to warn against possible damage or injuries that might result from known or potential defects or

3. A summary judgment for McCauley on the breach of warranties allegation is not challenged on this appeal.

4. It is undisputed that Massachusetts law imposes upon manufacturers a duty to warn of defects or dangerous conditions in their products about which manufacturers knew or should have known. *Carney v. Bereault*, 348 Mass. 502, 204 N.E.2d 448 (Sup.Ct.1965). No

challenge is raised here to the district court's instructions on that duty.

We have carefully considered McCauley's arguments based on the trial court's memorandum concerning New England's performance of the overhaul and the issuance of Service Bulletin 88 after that overhaul. The arguments are without merit, and, in view of our affirmance respecting the duty to warn, no useful purpose would be served by detailed discussion of them.

defective condition in the type of propeller described in plaintiffs' complaint.

McCauley responded:

No, there were no potential defects or defective conditions in the propeller.

■ Because McCauley did not raise that argument before the district court, it is improper here. Assuming arguendo its propriety, the argument is untenable. A plaintiff may place a defendant's answers in evidence and remain entitled to argue to the jury that those answers are false. *Whitman v. Fournier*, 228 Mass. 93, 117 N.E.3 (Sup.Ct.1917).

McCauley says further that there is no evidence of any defect or dangerous condition in Plaintiffs' propeller; that its decision to improve the design by removing certain sharp corners did not automatically imply that all propeller models having sharp corners were defective. That statement is rebutted by the record evidence of McCauley's recognition in 1962–64 that sharp corners inside the hub would lead to cracks, and that remedial action was mandatory. Removal of sharp corners was a corrective measure aimed at what McCauley recognized as an unsafe design. It was not just an innovation aimed at merely improving the "design". In such circumstances, the jury could reasonably have found that sharp corners constituted a defect or dangerous condition in Plaintiffs' propeller.

McCauley then says there is insufficient evidence from which the jury could find that it negligently failed to warn Plaintiffs.

McCauley's Service Manual requires that propeller and engine overhauls coincide and that intervals between overhauls not exceed 1200 hours. There is evidence that New England overhauled Plaintiffs' propeller at approximately the 1200 hour point.

From the absence of evidence that cracks would develop before 1200 hours, McCauley argues an absence of dangerous condition before that point, and asserts that if the possibility of cracks at or after 1200 hours implied a dangerous condition after that point, it discharged its duty to warn when it revised its service manual to require removal of sharp corners at overhaul; a requirement, in the context of the federal regulatory scheme, it was entitled to presume would be followed by repair stations.

■ The manufacturer's duty to warn of a defect or dangerous condition extends, however, to the purchaser of its product, *do Canto v. Ametek, Inc.*, 367 Mass. 776, 328 N.E.2d 873 (Sup.Ct.1975); *Walsh v. National Seating Co.*, 411 F.Supp. 564 (D.C.Mass. 1976), even if defects are discovered after the initial sale. *Comstock v. General Motors Corp.*, 358 Mich. 163, 99 N.W.2d 627 (Sup.Ct.1959); *Braniff Airways, Inc. v. Curtiss-Wright Corporation*, 411 F.2d 451 (2d Cir. 1969).

■ To be adequate, a warning must reasonably apprise the purchaser of the danger by direct notice or by an indirect notice which gives warning or eliminates the danger. That an indirect warning fails to reach a particular purchaser does not alone render the manufacturer negligent if the method of warning be adequate. Restatement (Second) of Torts, § 388 Comment c (1965).

■ It is undisputed that McCauley gave no direct notice to Plaintiffs. Whether McCauley discharged its duty to warn by revising its service manual, that is, whether the revision adequately warned Plaintiffs, was a question of fact. McCauley's assertion of a right to presume that repair stations would follow the manual rings hollow, for, respecting other propeller models having the same problem, McCauley knew in 1965 that repair stations had not been performing the required rounding and polishing operation. Despite that knowledge and the availability of alternative means of warning Plaintiffs, such as the belatedly issued Service Bulletin 88, McCauley chose to rely solely on whatever indirect notice might result from its service manual revision. In such circumstances, the jury would have been warranted in finding that McCauley's indirect notice constituted an inadequate method of warning and thus a negligent failure to warn.

**50**

### Conclusion

There being sufficient evidence to support a finding that McCauley negligently failed to warn Plaintiffs of a defect or dangerous condition in its product, the district court properly denied the motion for judgment notwithstanding the verdict. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*