Noble **CRIGLER**, Plaintiff-Appellant,

v.

**CESSNA AIRCRAFT COMPANY** and **Avco Corporation, Avco-Lycoming Division,** Defendants-Appellees.

No. 86–8796.

United States Court of Appeals, Eleventh Circuit.

Oct. 19, 1987.

Gerald Cunningham, Atlanta, Ga., for plaintiff-appellant.

Burt DeRieux, Greene, Buckley, DeRieux & Jones, Keith J. Reisman, Atlanta, Ga., for Avco Corp.

Eric D. Griffin, Jr., Mozley, Finlayson & Andersen, Atlanta, Ga., for Cessna Aircraft Co.

Before RONEY, Chief Judge, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Noble Crigler brought suit in federal court alleging that defendants-appellants Cessna Aircraft Company (Cessna) and Avco Corporation, Avco-Lycoming Division (Avco), conspired to defraud Crigler by selling him an airplane that had a defective engine while assuring Crigler that the engine was not defective. The district court granted summary judgment to both defendants, concluding that a Federal Aviation Administration (FAA) airworthiness directive (AD) put Crigler on legal notice of the engine problem and that Crigler therefore could not prove he justifiably relied on any misrepresentations. Crigler argues that summary judgment was improper; we disagree and affirm the district court's judgment.

Crigler bought a 1977 Cessna 172 Skyhawk airplane in 1979. The 1977 Cessna's engine, identified as Model 0–320–H2AD, was built by Avco. On February 8, 1980 the FAA issued an AD which noted that several 0–320–H2AD Avco engines had developed problems with bent pushrods and spalling of hydraulic valve tappets. The directive, AD 80–04–03,[1] set forth both immediate and recurring maintenance procedures that owners and operators of 0–320–H2AD engines were to employ in response to the problems noted in the AD. The first maintenance procedure set forth by AD 80–04–03 was to take place within 50 flight hours of the AD.[2]

In late August 1980, nearly seven months after AD 80–04–03 was published, Crigler traded the 1977 Cessna for a new, 1980 Cessna 172 Skyhawk.[3] The airplane dealer who sold the 1980 Cessna to Crigler—Cape Central Airways (Cape Central)—informed Crigler that the 1977 Cessna was worth less on trade-in because it "was a bad engine."[4] Crigler nevertheless decided to go ahead with the trade-in and sale and turned his attention to whether the new, 1980 Cessna would have the same engine problems. The Cape Central salesman and the Cape Central president allegedly informed Crigler that the airplane he was purchasing had a "completely different engine." Moreover, the Cape Central service manager informed Crigler that the engine problem had been solved. The Cape Central personnel also showed Crigler a Cessna brochure from which Crigler concluded that the 1980 Cessna had a different

---

1. AD80–04–03, which was published in the Federal Register as Docket No. 79–EA–39, amendment 39–3692, provided in relevant part:

   SUMMARY: This amendment issues a new airworthiness directive applicable to Avco Lycoming type aircraft engines which requires an initial replacement of the upper exhaust spring seats and hydraulic lifter and a repetitive inspection of the lubrication system for metal contaminants. It appears that bent push rods resulting from excess oil in the tappet reservoir have led to inflight power failure. Further, there appears to be continued findings of oil contamination reflecting deterioration of hydraulic valve tappets.
   SUPPLEMENTARY INFORMATION: Bent push rods in the Avco Lycoming 0–320–H2AD series engines have been reported and were experienced during flight, 18 of which incidents resulted in forced or unscheduled landings. Lycoming has modified its design of the hydraulic tappets to help alleviate this problem. There are also continuing reports of hydraulic valve tappet spalling. Since the proposed AD will require the replacement of the exhaust hydraulic tappets, periodic inspections of the lubrication system to monitor the valve tappet

condition are also included. Spalling of the tappets causes metal contaminants throughout the engine oil system.
45 Fed.Reg. 8952.

2. A May 21, 1980 entry in the maintenance log of Crigler's 1977 Cessna 172 stated: "AD 80–04–03 Due at Total Time of 286.0 hours." The log indicates that the 1977 Cessna had 236.0 hours of flight time when the maintenance entry regarding AD 80–04–03 was made.

3. At the time he purchased the 1980 Cessna, Crigler had held a private pilot's license for 16 years. During that time he had logged some 2500–3000 flight hours as pilot in command of Cessna 172s. The 1980 Cessna was the fourth Cessna 172 Crigler had bought.

4. Crigler allegedly asked $25,000.00–$26,000.00 for the 1977 Cessna; he was told the engine was bad, however, and that Cape Central therefore would only give him $18,000.00 trade-in. When quizzed on deposition whether he asked why the engine on the 1977 plane was "bad", Crigler stated that he did not inquire: "I wasn't interested. If it was bad, it was bad, you know."

engine.[5] Crigler bought the 1980 Cessna; he claims that he relied primarily on the brochure in making his decision to purchase the 1980 Cessna. More than five years and 480 flight hours later, the 1980 Cessna's engine failed and had to be replaced.

Crigler's complaint alleged that the defect in the 1980 Cessna's engine was "spalling and/or galling of the camshaft, cam lobe, hydraulic lifters, hydraulic tappets, lifters and tappets.... Metal contamination is usually present during visual inspection of the engine." The district court granted summary judgment for Avco and Cessna on the grounds that AD 80–04–03 put Crigler on legal notice that 0–320–H2AD engines had continuing problems with hydraulic valve tappet spalling and, consequently, metal contamination of the engine's lubrication system. Therefore, the district court concluded that Crigler could not prove justifiable reliance, one of the necessary elements of fraud.[6] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Airworthiness directives are mandatory regulations promulgated by the FAA and are binding on owners, operators and manufacturers. *See* 14 C.F.R. secs. 39.3, 39.1; *In re Airport Disaster at Metropolitan Airport, Detroit, Michigan on Jan. 19, 1979,* 782 F.2d 1041 (6th Cir.1985) (unpublished op.; available on LEXIS) [Available on WESTLAW, CTA6 database]; *Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1331 (10th Cir.1983), *cert denied sub nom. Piper Aircraft Corp. v. Seven Bar Flying Serv., Inc.,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); *LaBelle v. McCauley Indus. Corp.,* 649 F.2d 46, 47–48 (1st Cir.1981); *Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1315 (3d Cir.1978); *Rauch v. United Instruments, Inc.,* 548 F.2d 452, 458–59 & n. 11 (3d Cir.1976). An owner or operator is required to keep records regarding any maintenance programs required by ADs, including how the compliance was accomplished, the AD number and, if recurring maintenance is required, when the next maintenance must occur.[7] 14 C.F.R. secs. 91.163(a), 91.173(a)(2)(v). Most importantly, ADs are published in the Federal Register; and, as mandatory agency rules and regulations, publication therein acts as legal notice to owners and operators. *See generally* 49 U.S.C.A. secs. 1421, 1423; *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Buckner Trucking, Inc. v. United States,* 354 F.Supp. 1210, 1219 (S.D.Tex. 1973). As such, ADs are binding on owners and operators as part of the general safety regulatory powers of the FAA.

Crigler concedes (1) that he is bound by AD 80–04–03, (2) that, given the terms of the sales contract between Crigler and Cape Central, Cessna is not bound by any oral misrepresentations made by the Cape Central personnel, and (3) that the brochure he examined stated that the 1980 Cessna had a 0–320–H2AD engine, which is the same model engine as his 1977 Cessna. Crigler's theory of recovery is that AD 80–04–03 was insufficient to warn him that the 1980 Cessna's engine had a serious, and eventually totally debilitating, latent defect. Put differently, he contends that the AD notified him only of a minor problem, not a serious defect. At oral argument Crigler agreed that if AD 80–04–03 were sufficient to warn him of the defect alleged

---

5. Crigler concedes, however, that the specification section of the 1980 brochure clearly identified the engine as a 0–320–H2AD Avco engine. He instead points to general language in the brochure—e.g., "the remarkably efficient Skyhawk engine"—that he contends would make a reasonable person conclude that the 1980 Cessna 172 Skyhawk had a modified or improved engine.

6. To prove fraud, Georgia law requires the plaintiff to prove (1) a false representation made by the defendant, (2) scienter, (3) an intention to induce the plaintiff to act or refrain from acting in reliance on the false representation, (4) justifiable reliance on the misrepresentation, and (5) damage to the plaintiff.

7. As mentioned earlier, Crigler's maintenance log for the 1977 Cessna included an entry which reflected that AD 80–04–03 maintenance was required on the plane's engine within 50 flight hours.

in his pleadings, this court must affirm the summary judgment.

We conclude that the notice given by AD 80–04–03 regarding tappet spalling problems with the 0–320–H2AD engine was sufficient, as a matter of law, to put Crigler on notice that such engines were subject to spalling and, consequently, metal contamination of the engine's lubrication system. Moreover, even if Crigler could show justifiable reliance, summary judgment still would be required because Crigler has failed to designate specific facts showing that there is a genuine issue for trial regarding another element of fraud: that defendants made a false representation. Nothing in the record demonstrates—either directly or by implication—that Cessna, or for that matter, Avco, has made any false representation to Crigler.[8] Summary judgment therefore is appropriate.[9] *See Celotex,* 106 S.Ct. at 2553.

AFFIRMED.

---

8. The portions of the 1980 Cessna brochure that Crigler points to as misrepresentations simply are not. The only statements made in the brochure's text regarding the engine merely refer, in general terms, to the engine as efficient and well-designed. In addition, the specifications included in the brochure undeniably state that the engine is an AVCO 0–320–H2AD, the same engine model subject to AD 80–04–03 (and the same engine model that Crigler had in his 1977 Cessna). The brochure does not state, nor could anyone reasonably infer, that the 1980 Cessna's engine had been modified. We reemphasize that when Crigler arrived at Cape Central he was put on notice—via AD 80–04–03— that the 0–320–H2AD engine was flawed; once he began negotiations he was put on notice that the 0–320–H2AD engine in his 1977 Cessna had

a major flaw that significantly depreciated—by about 30–35%—the value of his 1977 aircraft. The Cessna brochure's representations were neither false nor could they be viewed, even inferentially, as falsely representing that the 0–320–H2AD engine in the 1980 Cessna was in any way different from the 0–320–H2AD engine in the 1977 Cessna. Since Crigler concedes that the representations made by the Cape Central personnel are not binding on Cessna, he can point to no misrepresentations made by, or attributable to, Cessna.

9. Cessna and Avco also contend that Crigler's cause of action is barred by the appropriate statute of limitations. We need not reach this issue given our disposition of the case.