**CATHEDRAL OF JOY BAPTIST CHURCH and Reverend Samuel E. Hinkle, Plaintiffs–Appellants,**

v.

**VILLAGE OF HAZEL CREST, a municipal corporation, and Dianna J. Chalmers, Richard J. Hebda, John E. Kaindl, Ronald J. Kelly, James A. Labeau, Kathleen Witt, individually and as agents of the Village of Hazel Crest, Defendants–Appellees.**

No. 93–1225.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 16, 1993.

Decided April 22, 1994.

---

Kimball R. Anderson, James F. Hurst (argued), David E. Koropp, Joseph B. Van Fleet, John N. Walker, Winston & Strawn, Chicago, IL, for plaintiffs-appellants.

Ronald Cope, David Lincoln Ader (argued), James L. Gitz, Gregory L. Dose, Ancel, Glink, Diamond & Cope, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The Rev. Samuel E. Hinkle sought to relocate his Cathedral of Joy Baptist Church to the Village of Hazel Crest, Illinois. The special use zoning permit required for such a relocation was denied by the Board of Trustees of the Village of Hazel Crest on June 28, 1988. Two years and one day later, on June 29, 1990, the church and its pastor filed a civil rights suit against the Village alleging racial and religious discrimination. On cross-motions for summary judgment, the district court granted judgment in favor of the Village on the ground that the church's

claims were time-barred under Illinois' two-year statute of limitations. 735 ILCS 5/13–202. The district court reasoned that the statute began to run when the Village voted to deny the permit on June 28, 1988, and not when the church's agents first learned of the results of the vote three days later, on July 1, 1988. On appeal, the church renews its argument that the "discovery rule" postponed the commencement of the statute of limitations to July 1, 1988. For the following reasons, we affirm.

## I. FACTS

The Cathedral of Joy, a church with a predominantly African–American congregation, hoped to relocate to a building once used as a restaurant in the Village of Hazel Crest. The Village's zoning ordinance requires that a special use permit be obtained for the establishment of any church in a zoning district in which churches are an allowed use. Under the zoning ordinance the Village Board of Trustees is authorized to grant a special use permit, but only after (1) a written report on the special use application is produced by the Village's Plan Commission and forwarded to both the Board of Trustees and the Village's Board of Zoning Appeals, and (2) a public hearing on the requested special use has been held by the Board of Zoning Appeals and its findings and recommendations have been reported to the Board of Trustees.

The church had entered into a contract to purchase the former Ponderosa restaurant in Hazel Crest for $240,000.00. According to the purchase agreement, the acquisition of the property by the church was conditioned upon the issuance of a special use permit allowing the property to be used as a church. On April 1, 1988, Rev. Hinkle, on behalf of the church, applied to the Village for the required special use permit. With its application was a request that notice of any hearing or meeting concerning the application be sent to the church's attorney, Thomas Vaughn.

At its regularly scheduled meetings on May 9th and May 16th, 1988, the Hazel Crest Plan Commission reviewed Cathedral's special use application. On May 9th, Rev. Hin-kle and Attorney Vaughn attended the Plan Commission Meeting and were told that their application would be placed on the agenda of the May 16th meeting. On May 16th, Rev. Hinkle and Attorney Vaughn presented their proposal for the use of the building to the Plan Commission. At the conclusion of discussions, the Plan Commission, by a three-to-two vote, recommended to the Village Board of Trustees that the special use permit sought for the church be rejected.

The next day, May 17, 1988, pursuant to published notice, the Hazel Crest Zoning Board of Appeals held a public hearing on the church's requested special use permit. The church was represented at this hearing by Rev. Hinkle and Attorney Vaughn, who presented testimony and argument in support of the special use permit. By a four-to-two vote, the Zoning Board of Appeals recommended to the Village Board of Trustees that the church's application for a special use permit be denied.

The Village Board of Trustees, pursuant to an ordinance adopted by it on January 6, 1988, held public meetings on each Tuesday throughout the year. "Administrative" board meetings (designated as a "committee of the whole") were held on the first and third Tuesdays of each month for the purpose of discussing and reviewing administrative matters, with formal action on those matters to take place at the next "regular" board meeting. "Regular" board meetings were held on the second and fourth Tuesdays of each month for the purpose, among other things, of taking formal action on administrative matters held under review from the previous week's "administrative" board meeting. Both the administrative board meetings and the regular board meetings were open to the public. Notices of the regular board meetings were published in the Village Hall four days before each meeting.

On June 21, 1988, after receiving notice, Rev. Hinkle and Attorney Vaughn attended the administrative meeting of the Village Board of Trustees where the church's special use permit was discussed. During the discussion four of the Village's six trustees indicated that they opposed the use of the res-

taurant property for a church. The Village President publicly announced that the church's application would be placed on the agenda of the "next regular Board meeting" and the minutes of that meeting so indicate. Rev. Hinkle and Attorney Vaughn, however, left before the meeting adjourned. According to the published schedule of meetings, the next regular Board meeting following the administrative meeting on June 21st would be held on June 28th.

No written notice of the June 28th meeting was given to Rev. Hinkle or Attorney Vaughn. Public notice of the June 28th meeting of the Village Board of Trustees was posted in the Village Hall four days prior to the meeting. Additionally, the June 26, 1988 edition of an area newspaper, the *Star*, carried as its front page lead headline a news story relating the discussions among Rev. Hinkle, Attorney Vaughn and Village Board members at the June 21st administrative meeting. The article stated that the Village Board announced that it would take action on the church's application at a meeting on Tuesday, June 28, 1988, at 8:00 P.M.

The Village Board of Trustees, at the regular board meeting on June 28, 1988, voted five-to-one to deny the church's special use permit application. No representative of the church was present at that meeting. On July 1, 1988, three days after the Village Board rendered its decision, the church, on the basis of a letter from the Village manager, first learned that its application for the special use permit had been denied.

On June 29, 1990, two years and one day after the decision of the Village Board of Trustees denying the church's special use permit, the church filed this civil rights lawsuit.

## II. PROCEDURAL STATUS

In its complaint, the church alleged that the Village's zoning requirement of a special use permit, and the procedure for obtaining one, are used to discriminate against a constitutionally protected class. The complaint further states that the special use permit requirement and approval procedure pose an unreasonable burden on the members of the

church in the exercise of their religious beliefs. The Village moved to dismiss the action because the Illinois statute of limitations expired on June 28, 1990, two years after the Village Board's decision—and one day prior to the filing of the church's complaint. The district court declined to grant the motion because the factual questions presented would not be appropriately resolved on a motion to dismiss.

Eventually, both plaintiffs and defendants filed motions for summary judgment. The district court referred the motions to a magistrate judge who determined that the "discovery rule" was not applicable "because the knowledge of the Board's decision was available to the plaintiffs on June 28, 1988, whether or not they availed themselves of it." The district court adopted the magistrate judge's recommendation, and this appeal followed.

## III. DISCUSSION

■ We review motions for summary judgment *de novo* to determine if there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Pro-Eco, Inc. v. Board of Comm'rs,* 956 F.2d 635, 637 (7th Cir.1992). The record and all inferences drawn from it must be viewed in the light most favorable to the party opposing the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ The sole issue before us for *de novo* review is whether the district court correctly determined that the church failed to file its complaint within the applicable statute of limitations period. Because § 1983 does not provide for a specific statute of limitations, federal courts look to the law of the state where the injury occurred to determine the statute of limitations in a § 1983 case. *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985); *Kelly v. City of Chicago,* 4 F.3d 509, 510 (7th Cir. 1993). With regard to this action the applicable period in Illinois is two years. 735 ILCS 5/13–202 (formerly Ill.Rev.Stat. ch.

110, ¶ 13–202); *Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir.1992).

 Generally, a claim accrues when all its elements have come into existence. The "discovery rule," which is read into state statutes of limitations in federal question cases, postpones the beginning of the limitations period of a federal claim from the date the party is injured to the date when the party discovers or should have discovered the injury, exercising reasonable diligence. *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092, 1095 (7th Cir. 1990). The discovery rule is an exception to the time-bar provision. Thus, the church has the burden of showing that it falls within the exception by demonstrating that even with the exercise of reasonable diligence it could not have known of the purported injury inflicted by the Village on the 28th of June, 1988. *Clift v. United Auto Workers,* 818 F.2d 623, 629 (7th Cir.1987), *rev'd and remanded on other grounds,* 488 U.S. 1025, 109 S.Ct. 830, 102 L.Ed.2d 963 (1989); *Crawford v. United States,* 796 F.2d 924, 929 (7th Cir.1986).

An objective inquiry into the facts must be made to determine when a plaintiff should have discovered its injury. *Fries,* 909 F.2d at 1095. In making such an inquiry in this case, we accept the church's assertion that neither Rev. Hinkle or Attorney Vaughn knew when they left the administrative Board meeting on June 21, 1988, that action on their request for a special use permit had been scheduled for the next regular Board meeting of June 28, 1988. Taking the foregoing as true and examining the undisputed facts, the question for us is, should the church, acting as a reasonably diligent plaintiff, have discovered the denial of the special use permit on the day the Village Board acted, June 28, 1988. The following are the relevant facts that bear directly on the answer to this question.

At each successive meeting of the Plan Commission and the Board of Zoning Appeals, those bodies voted to recommend that the church's special use permit be denied.

At the June 21, 1988 administrative meeting of the Board of Trustees, four of the six trustees stated that they opposed the use of the restaurant property for a church.

The ordinance which governed the meeting schedule of the Village Board of Trustees set forth the relationship between administrative Board meetings and regular Board meetings. The ordinance gave notice that administrative matters heard at the administrative Board meeting on the third Tuesday of the month (June 21, 1988) would be scheduled for action at the regular Board meeting held on the fourth Tuesday of the month (June 28, 1988).

For each meeting of a Village body, before which the church was scheduled to make a presentation in support of its request for a special use permit, the church received advance notice of the date and time of the meeting. In this regard, there were the May 9th and 16th meetings of the Plan Commission and the May 17th meeting of the Zoning Board of Appeals. Likewise, the church received advance notice of the June 21st administrative meeting of the Board of Trustees. It was at this administrative meeting that the church was scheduled to make its only presentation to the Board of Trustees.

At the administrative meeting on June 21st Rev. Hinkle and Attorney Vaughn were advised that no further presentation would be permitted by the church at the regular Board meeting at which its request for a special use permit would be addressed. Regular Board meetings were limited to public comment, discussions of such pending matters among the Board of Trustees and a formal vote thereon.

At the administrative meeting of the Village Board on June 21st, the Village President publicly announced that the church's petition for a special use permit would be placed on the agenda for the next regular Board meeting. Nevertheless, when Rev. Hinkle and Attorney Vaughn left the administrative meeting of the Board before adjournment they were unaware of the scheduling of a vote on the church's permit request for the regular Board meeting on June 28th. Rev. Hinkle and Attorney Vaughn did be-

lieve, however, that the church's application would be presented at some subsequent Board meeting.

The official minutes of the June 21st administrative meeting state that "President Kauchak directed the petition be placed on the next Regular Board Meeting agenda."

Notice of the regular meeting on June 28, 1988, was posted in the Village Hall four days prior to that date.

A front page article in the *Star* on June 26th featured a story on the church's application to the Village Board and reported that the Board would decide the issue on June 28th. When addressing the Board on June 21st, Rev. Hinkle acknowledged that he was familiar with the *Star* and that he had followed the stories about the church's application process.

Neither Rev. Hinkle nor Attorney Vaughn contacted or made inquiry of any Village official between June 21st and June 28th to determine when the church's permit application would be acted upon by the Board of Trustees.

Based on the foregoing factors, the church argues that it was reasonable for Rev. Hinkle and Attorney Vaughn to merely await receipt of a notice from the Board regarding the meeting date on which a formal vote would be taken on the church's permit application. This is so, the church claims, because the Village bodies had provided advance notice of the first four meetings and thus the church reasonably expected the Board of Trustees to provide it advance notice of the date on which final action was to be taken on the church's permit request. What was the history of advance notice provided to the church? On May 9th Rev. Hinkle and Attorney Vaughn attended an informal meeting of the Plan Commission and were verbally informed that their application would be placed on the agenda of the formal May 16th Plan Commission meeting. Prior to the May 16th Plan Commission meeting the church received written notice that the Board of Zoning Appeals would address the church's request for a special use permit at its May 17th meeting. A month later, on June 17th, the church received written notice that the Board

of Trustees would address the church's permit request at an administrative meeting on June 21st.

Focusing on the past circumstances of advance notification, did the church and its attorney exercise reasonable diligence after June 21st in determining the fate of their special use permit application by doing nothing but waiting for the delivery of a written notice telling them when the Village Board would take action? As we have seen, the facts show that with regard to the four preliminary meetings, in two instances prior written notice of meetings was given, and in two instances only verbal notification of upcoming meetings was provided during the course of earlier meetings.

Thus, the church was aware that prior notification of meetings had come either from written notice or verbally during an earlier meeting. Under these ambiguous circumstances, we do not believe that the church, and its counsel, exercised reasonable diligence in simply assuming that a written notice of a date for board action would be forthcoming. Rev. Hinkle and Attorney Vaughn left the administrative Board meeting on June 21st prior to adjournment and without any understanding of when the Board would act on their permit request. Based on the comments made by members of the various boards during the successive administrative hearings, the church had ample reason to suspect that its application might ultimately be rejected by the Village Board. Reasonable diligence required that some inquiry should have been made to learn when the Board would act on a matter of substantial significance to the church.

The newspaper article appearing in the *Star* shows that prior to June 26th information was available to the public indicating that the church's special use permit application was set for final determination before the Village Board at 8:00 P.M., on June 28th. Yet no inquiry was made by Rev. Hinkle or Attorney Vaughn on behalf of the church to learn what was already public knowledge.

The church further argues that diligence must be accompanied by reasonable motivation. Thus, it argues that because the church would have no further opportunity to

present information to the Board of Trustees following the June 21st administrative meeting, it had no reason to actively pursue a determination of the date the Board would take action on its permit request. It appears, however, just the opposite is true. At all the prior meetings there was required interaction between the church and the various Village bodies. It was, therefore, necessary to have the church present so the various bodies could receive information relative to the special use permit. However, the regular Board of Trustees meeting on June 28th was solely for the purpose of action on the special use permit request. Because the church's presence was unnecessary for the resolution of the matter and adverse action was certainly a possibility, the motivation to determine when the Board action would be taken should have been heightened—not diminished. The church has not carried its burden of proof that the facts allow it to come within the discovery rule exception to the two-year statute of limitations.[1]

The church contends that the issue of reasonable diligence in discovering its injury is a question of fact for the jury, not the court. However, reasonable diligence may become an issue for the court if the relevant facts are undisputed and only one conclusion may be drawn from them. *Kedzierski v. Kedzierski*, 899 F.2d 681, 683 (7th Cir.1990) (plaintiff had sufficient information concerning alleged injury and its cause to put him on notice to inquire further); *see also Witherell v. Weimer*, 85 Ill.2d 146, 52 Ill.Dec. 6, 11, 421 N.E.2d 869, 874 (1981) ("Where it is apparent from the undisputed facts ... that only one conclusion can be drawn, the question becomes one for the court."). Such is the case here. The undisputed facts could lead a rational trier of fact but to one conclusion:

the church's failure under the circumstances to make *any* inquiry between June 21st and June 28th as to when the Board of Trustees would act on their special use permit request demonstrated a lack of reasonable diligence.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the grant of summary judgment entered in this case.

---

1. Taking a more fundamental view, in cases such as the one before us it would appear that the discovery rule may actually be inapplicable. There was, in fact, nothing to be "discovered." Here, a matter of public concern (the special use permit) was submitted by an applicant for consideration by municipal bodies at successive public hearings. The date for final determination was announced publicly and set for a regularly scheduled meeting—a fact which appeared in the news media. The action was taken at the date and time previously announced to the public. In the absence of any effort by the municipal body to take action in a secretive or clandestine manner out of public view or to otherwise hide its action from the applicant, there was nothing to discover. Perhaps a "bright line" rule would be more rational. Under such a theory a legal claim based on a decision of a municipal body made at a scheduled public meeting would accrue at the time the public action is taken. *See, Peter Henderson Oil Co. v. City of Port Arthur, Tex.,* 806 F.2d 1273, 1275 (5th Cir.1987).