Steven Spencer **PORTER**, Plaintiff,

v.

**CHARTER MEDICAL CORPORATION,**
**et al., Defendants.**

No. 4:96–CV–382–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

March 20, 1997.

Order Denying Amendment
April 28, 1997.

---

Robert Franklin Andrews, Martin Jay Cirkiel, Andrews & Cirkiel, Fort Worth, TX, for Steven Spencer Porter.

Walter Andrew Herring, Fulbright & Jaworski, Dallas, TX, for Charter Medical Corp., Robert H. Crist, Gary Barton and Charter-Provo School Inc.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Came on for consideration the motion of defendant Charter–Provo School, Inc., d/b/a Provo Canyon School ("Charter–Provo") for summary judgment ("Motion") on the grounds that the claims of plaintiff, Steven Spencer Porter ("Porter"), are barred by applicable limitations periods. Upon consideration of the motion, the various responses and replies, the record, the summary judgment evidence, and applicable authorities, the court finds that the Motion should be granted.

## I.

### History and Nature of the Action

This action was instituted by Porter on May 30, 1996, by the filing of his original complaint complaining of the conduct of Charter–Provo in causing him to be admitted to its health care facility in Provo, Utah, and the care and treatment he received while in that facility. He also named as defendants Charter–Provo's parent corporation, Charter Medical Corporation, and two employees of Charter–Provo, Robert H. Crist, M.D., ("Crist") and Gary Barton, Ph.D., ("Barton"). Subject matter jurisdiction is based upon the federal claims made by Porter pursuant to 18 U.S.C. § 1964 ("RICO") and 42 U.S.C.

§ 1983.[1] State law claims also were asserted. By an order and final judgment dated September 27, 1996, this court dismissed claims Porter had made against Charter Medical Corporation. By an order and final judgment dated December 31, 1996, Porter's claims against Crist and Barton were dismissed for lack of personal jurisdiction.

With leave of court, Porter filed his first amended complaint on March 5, 1997, in which he made the federal and state law claims against Charter–Provo that are described below.

A. Federal law claims:
1. Violations of 18 U.S.C. § 1964 ("RICO") (Count I); and
2. Pursuant to 42 U.S.C. § 1983 (Count II).

B. State law claims:
1. False imprisonment (Count III);
2. Invasion of privacy-intrusion upon seclusion (Count IV);
3. Medical negligence (Count V);
4. Fraud (Count VI);
5. Intentional infliction of emotional distress (Count VII);
6. Civil conspiracy (Count VIII);
7. Loss of parental consortium (Count IX); and
8. Battery (Count X).

## II.

### *The Motion*

Charter–Provo contends that the summary judgment record establishes without dispute that Porter's claims are barred by either a two-year limitations period or a four-year limitations period. It acknowledges that, because of a Texas tolling statute, the running of limitations was tolled so long as Porter was under eighteen years of age. However, it asserts, as to each of Porter's claims, that the applicable limitations period ran after Porter became 18 years of age and before this action was filed. The dates relevant to

Charter's motion are: May 30, 1974, Porter's date of birth; September 18, 1988, date of Porter's admission to Charter–Provo; June 23, 1989, date of Porter's discharge from Charter–Provo; May 30, 1992, Porter's eighteenth birthday; and, May 30, 1996, date when Porter instituted this action. Charter–Provo maintains that the summary judgment evidence does not raise any material issue of fact as to any of Porter's theories that tolling caused the limitations period not to start running when Porter became eighteen.

## III.

### *Response to the Motion*

Porter does not dispute that he brought his claims more than four years after Charter–Provo allegedly injured him. Nor does he dispute the relevant dates upon which Charter–Provo relies. Porter asserts, however, that the summary judgment evidence raises issues of material fact as to his contention that none of his claims are barred because all statutes of limitations were tolled as to him based on his minority, unsound mind, fraudulent concealment, the discovery rule, duress, and coercion. Porter also contends that Charter–Provo is equitably estopped from saying that limitations has run on his claims. Finally, Porter maintains that the claims that are governed by a four-year limitations period were timely filed even if the only tolling was the one related to his minority.

## IV.

### *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at

---

1. Diversity jurisdiction appears to exist as well, but it was not alleged as a basis for subject matter jurisdiction.

256, 106 S.Ct. at 2514. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. at 2510, 2514. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. at 1361–62.

## V.

### Analysis

#### A. Applicable Limitations Periods.[2]

##### 1. State Law Claims Other Than Fraud.

■ Health care liability claims are subject to a two-year limitations period under Texas law:

> Sec. 10.01. Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.[3]

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp.1997). A "health care liability claim" is defined as follows:

> (4) "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, where the patient's claim or cause of action sounds in tort or contract.

*Id.* § 1.03(a)(4).

■ Despite the labels Porter attaches to his claims for false imprisonment, invasion of privacy-intrusion upon seclusion, medical negligence, intentional infliction of emotional

---

**2.** For procedural matters, such as statutes of limitations, Texas, generally speaking, applies the law of the forum state. *Hollander v. Capon*, 853 S.W.2d 723, 727 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *see Slack v. Carpenter*, 7 F.3d 418, 419 (5th Cir.1993); *FDIC v. Dawson*, 4 F.3d 1303, 1308–09 (5th Cir.1993), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994); *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir.1993); *Adams v. Gates Learjet Corp.*, 711 F.Supp. 1377, 1379 (N.D.Tex.1989). The court also will apply Texas law with respect to the tolling provisions as to both Porter's state law claims and federal law claims. *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir.1992).

**3.** The Texas Supreme Court has held that § 10.01 of art. 4590i is unconstitutional under the open courts provision of the Texas Constitution to the extent that it does not allow tolling of limitations on a minor's claims until his 18th birthday. *Weiner v. Wasson*, 900 S.W.2d 316, 318–19, 321 (Tex.1995).

distress, civil conspiracy, loss of parental consortium, and battery, the fact is that all such claims stem from the allegations that Charter–Provo treated Porter improperly, failed to provide him with the necessary and appropriate treatment, and departed from accepted standards of health care, with the proximate result that Porter was injured. As a result, all such claims of Porter are health care liability claims that are governed by the two-year limitations period prescribed by § 10.01 of art. 4590i. *See Waters ex rel Walton v. Del–Ky, Inc.,* 844 S.W.2d·250, 259 (Tex.App.—Dallas 1992, no writ).

■ Porter argues that art. 4590i does not apply to intentional torts, relying on the Texas Supreme Court's ruling that claims that a health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability & Insurance Improvement Act. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994). However, the court does not read *Sorokolit* to mean that the two-year limitations period applicable to health care liability claims applies only to negligence claims, or that health care liability claims otherwise labeled are not subject to art. 4590i.

Moreover, even if Porter's claims for false imprisonment, invasion of privacy, intentional infliction of emotional distress, civil conspiracy, breach of fiduciary duty, loss of parental consortium, and battery were not properly classified as health care liability claims, the statute of limitations for each of these claims nevertheless would be two years. *See* Tex. Civ. Prac. & Rem.Code § 16.003 (Vernon 1986 & Supp.1997); *see, also, Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1088 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985) (holding that invasion of privacy is governed by the two-year statute of limitations); *Polly v. Houston Lighting & Power Co.,* 803 F.Supp. 1, 7 (S.D.Tex.1992), *adopted in part,* 825 F.Supp. 135 (S.D.Tex.1993) (holding that state law claims of assault, battery, and intentional infliction of emotional distress are governed by the two-year statute of limitations for intentional torts); *Hanley v. First Investors Corp.,* 793 F.Supp. 719, 721 (E.D.Tex.1992) (holding that the Texas two-year statute of limitations for torts governs claims for breach of fiduciary duty); *Trapnell v. Sysco Food Servs., Inc.,* 850 S.W.2d 529, 551 (Tex. App.—Corpus Christi 1992), *aff'd,* 890 S.W.2d 796 (Tex.1994) (holding that a cause of action for loss of consortium is governed by § 16.003, the two-year limitations statute); *White v. Cole,* 880 S.W.2d 292, 295 (Tex. App.—Beaumont 1994, writ denied) (holding that false imprisonment is governed by the two-year statute of limitation); *Stevenson v. Koutzarov,* 795 S.W.2d 313, 318–19 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (holding that claims for civil conspiracy, invasion of privacy, and intentional infliction of emotional distress are governed by the two-year statute of limitations); *Redman Indus., Inc. v. Couch,* 613 S.W.2d 787, 789 (Tex.Civ. App.—Houston (14th Dist.) 1981, writ ref'd n.r.e.) (holding that the Texas two-year statute of limitations for torts governs claims for breach of fiduciary duty); *Marburger v. Jackson,* 513 S.W.2d 652, 655 (Tex.App.— Corpus Christi 1974, writ ref'd n.r.e.) (holding that the two-year statute of limitations applies to the tort of battery).

2. *Fraud Claims.*

■ The allegedly fraudulent conduct of Charter–Provo consists of representations to, or failure to inform, plaintiff or his parents concerning his need for treatment, the treatment alternatives, the characteristics and capabilities of Charter–Provo's staff, the characteristics of the Charter–Provo facility, and the type of treatment he would receive or did receive. Also, Porter complains that Charter–Provo did not make full disclosure concerning the cost of care and billing practices.

The court is inclined to agree With Charter–Provo's argument that Porter's fraud claims are really health care liability claims. Despite the fraud label plaintiff attaches to those claims, the fact is that all the claims are but ways of saying that plaintiff failed to receive proper medical treatment, that Charter failed to provide plaintiff with the necessary and appropriate treatment, and that Charter departed from accepted standards of health care, with the proximate result that plaintiff was injured. The court finds helpful the Texas intermediate appellate court deci-

sion in *Waters ex rel. Walton,* 844 S.W.2d 250. In *Waters,* the survivor of a patient asserted claims against a health care provider, including causes of action for breach of fiduciary duty and breach of good faith and fair dealing. The plaintiff alleged that the health care provider placed its own monetary interest over the health and well-being of her deceased brother (the patient); and, she asserted that, therefore, her claims did not come within the definition of a "health care liability claim," as that term is used in § 1.03(a)(4) of article 4590i. In rejecting the plaintiff's contention, the *Waters* court noted that the allegations of the plaintiff presented another circumstance of "trying to recast a health care liability claim in the language of another cause of action," *id.* at 259, and went on to explain:

> Water's claims of breach of fiduciary duty and breach of good faith and fair dealing are claims for lack of treatment or other claimed departure from accepted standards of medical care, health care, or safety that resulted in injury and death to her brother. These claims are "health care liability claims."

*Id.* Here, plaintiff's fraud claims appear to present yet another circumstance of a plaintiff "trying to recast a health care liability claim in the language of another cause of action." Id. However, the court does not need to decide whether the two-year limitations period prescribed by art. 4590i applies because the fraud claims are subject to a limitations bar even if it does not.

If the conclusion were to be reached that the fraud claims are not the equivalent of health care liability claims, they would be governed by the Texas four-year statute of limitations, found at § 16.004, Tex. Civ. Prac. & Rem.Code.

#### 3. *RICO Claims.*

Civil RICO claims are subject to a federal four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987); *Longden v. Sunderman,* 737 F.Supp. 968, 971 (N.D.Tex.1990).

#### 4. *Claims Under 42 U.S.C. § 1983.*

Porter's § 1983 claims are subject to Texas's two-year limitations period for personal injury. Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 1986 & Supp.1997). See *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989).

#### B. *"Accrual" of Porter's Causes of action.*

■ Generally speaking, under Texas law a cause of action accrues "at the time when facts come into existence which authorize a claimant to seek a judicial remedy." *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex. 1977). See also *Moreno v. Sterling Drug. Inc.,* 787 S.W.2d 348, 351 (Tex.1990) (where the Texas Supreme Court said that "[f]or purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury"). In a fraud action, the plaintiff is entitled to seek a judicial remedy as soon as the fraud is perpetrated. See *Woods v. William M. Mercer. Inc.,* 769 S.W.2d 515, 517 (Tex.1988). The general rule "obtains notwithstanding the fact that the damages, or their extent, are not ascertainable until a later date." *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967). All of Porter's state law claims are subject to this general rule.[4]

---

4. There is uncertainty whether concepts such as "discovery rule" and "fraudulent concealment" define date of "accrual" or whether they should be treated as providing "tolling" following accrual. For example, in *Moreno v. Sterling Drug, Inc.,* the Texas Supreme Court in consecutive sentences said, first, that the discovery rule "is used to determine when the plaintiff's cause of action accrued" and, in the next, that the discovery rule "operates to toll the running of.the period of limitations until the time when the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury." 787 S.W.2d 348, 351 (Tex.1990). See also *S.V. v. R.V.,* 933 S.W.2d 1, 4–5 (Tex. 1996) (where a discussion of Texas appellate court decisions dealing with the "discovery rule" and "fraudulent concealment" theories discloses that in some cases one or the other is said to toll limitations and in others one or the other is referred to as a factor in determining when the cause of action accrued). Texas case authorities

The statute of limitations began to run as to Porter's § 1983 claims the moment he became aware that he had suffered an injury or had sufficient information to know that he had suffered an injury. *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987). The burden is on the plaintiff to prove applicability of the tolling feature of the federal rule. *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713 (7th Cir.), *cert. denied*, 513 U.S. 872, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994).

As has recently been noted, the Fifth Circuit has yet to address the question of when a RICO cause of action accrues. *Crowe v. Smith*, 856 F.Supp. 1178, 1181 (W.D.La.1994), *rev'd on other grounds without published opinion*, 81 F.3d 155 (5th Cir. 1996).[5] Each of the circuits that has addressed the issue "has incorporated the principle of discovery into the accrual rule governing civil RICO actions in the particular circuit." *Granite Falls Bank v. Henrikson*, 924 F.2d 150, 153 (8th Cir.1991). However, the circuits differ on "the question of what the plaintiff must actually or constructively know before the limitations period will start to run." *Id.* As the district court in *Crowe* noted,

> The First, Second, Fourth, Seventh and Ninth Circuits employ an injury-based accrual rule. Under this method, a civil RICO cause of action accrues at the time plaintiff discovered or should have discovered his injury. The Third, Eighth, Tenth and Eleventh Circuits have, on the other hand, adopted an accrual rule which applies the general discovery rule to both the pattern element and the injury element of RICO. In other words, these courts find that a civil RICO cause of action does not accrue until the plaintiff discovers or should have discovered the source of his injury and that the injury is part of a pattern.

*Crowe*, 856 F.Supp. at 1181–81. The Third Circuit adds an additional element to the accrual equation, adding what is referred to as the "last predicate act" rule:

> [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed *unless, as a part of the same pattern of racketeering activity there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity.*

*Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1130 (3d Cir.1988) (emphasis added).

After lengthy analysis, the *Crowe* court decided that, in absence of guidance from the Fifth Circuit, the appropriate accrual rule was the one articulated by the Third Circuit in *Keystone*. *Crowe*, 856 F.Supp. at 1184. That rule (1) mandates that the limitations period will not start to run on a civil RICO action until the plaintiff knew or should have known, not just of her injury, but of the elements of her RICO action, and (2) incorporates the "last predicate act" rule as to further predicate acts that are part of the same pattern.

Having considered the arguments in favor of the various accrual rules, and being particularly impressed with the reasoning employed by the First and Second Circuits, the court concludes that it agrees with what has been termed the majority view, which ties accrual to the time a plaintiff knew or should have known of his injury. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1463–66 (7th Cir. 1992); *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665–68 (1st Cir.1990); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–05 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109

suggest that the plaintiff has the burden of proof in either event. Because the same result is reached in this case whether the discovery rule and fraudulent concealment concepts are treated as tolling theories or as date of accrual theories, for convenience the court, somewhat arbitrarily, is discussing them in this memorandum opinion as tolling theories.

**5.** The Fifth Circuit's unpublished opinion in *Crowe* discloses that the Fifth Circuit's reversal was based on its conclusion that plaintiffs' RICO claims were precluded by prior litigation between one of the plaintiffs and one of the defendants.

S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274–76 (9th Cir.1988); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987). The court notes that this accrual rule is consistent with the Fifth Circuit's description of the general accrual rule for federal claims. *Helton*, 832 F.2d at 335. Furthermore, the court has concluded that the burden of proof is on the plaintiffs as to the "discovery" feature of this accrual rule. The reasoning of *Cathedral of Joy* on this general subject is persuasive. *Cathedral of Joy*, 22 F.3d at 717.

 The summary judgment evidence makes clear that the injuries of which Porter complains occurred before his discharge from the Provo Canyon facility in June 1989 and that he knew, or should have known, no later than when he was discharged from the facility that he had suffered those injuries. Certainly, the summary judgment record establishes without dispute that by the time Porter reached his 18th birthday he knew of all injuries about which he complains. Therefore, the court concludes that all of Porter's causes of action accrued sometime before he reached his 18th birthday.

C. *Tolling Based on Minority of Porter.*

Even though Porter's "causes of action" accrued before he became 18 years of age, he enjoys the benefit of a tolling provision in Texas statutory law that prevents the running of limitations while a person is "[y]ounger than 18 years of age." Tex. Civ. Prac. & Rem.Code § 16.001. The parties agree that this tolling statute applies, but there is disagreement as to when the tolling period ends, a subject to which the court returns at a later point in the memorandum opinion.

D. *Porter's Other Tolling Theories.*

1. *General Rules on the Subject of Tolling:*

 Under Texas law, the burden of proof at trial with respect to all of the theories urged by a plaintiff for the suspending or tolling the running of limitations is on the plaintiff. The Texas Supreme Court said in *Weaver v. Witt* that "in a conventional trial on the merits, proof of facts suspending operation of a statute of limitations is the burden of the party pleading suspension." 561 S.W.2d 792, 794, n. 2 (Tex.1977). *See also Woods*, 769 S.W.2d at 518; *Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex.1988); *Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876, 880 (1962); *National Resort Communities v. Short*, 712 S.W.2d 200, 201–02 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Helton*, 832 F.2d at 336.

 Texas procedural law requires a summary judgment movant relying on limitations to negate the discovery rule, when invoked, by showing by undisputed summary judgment evidence that the plaintiff discovered, or should have discovered, the facts giving rise to his claim. *Woods*, 769 S.W.2d at 518 n. 2. However, under federal practice the burden of adducing evidence at the summary judgment stage parallels the burden of proof that would exist at the trial stage. *See FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir.1993), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Thus, the summary judgment burden is on Porter as to all his tolling theories.

 As a general rule, the limitations period established by art. 4590i is absolute and cannot be tolled except as expressly provided by the statute. *See. e.g., Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985) (holding that the two-year limitations period cannot be tolled by the discovery rule); *Waters ex rel Walton*, 844 S.W.2d at 255–56 (agreeing that tolling on the basis of unsound mind is not an option). However, art. 4590i does not abolish fraudulent concealment as an equitable estoppel to the affirmative defense of limitations under that statute. *Borderlon v. Peck*, 661 S.W.2d 907, 908–09 (Tex. 1983).

2. *Porter's Unsound Mind Tolling Theory.*

Porter relies on the parts of § 16.001, Tex. Civ. Prac. & Rem.Code, that provide that a person of unsound mind is under a legal disability and that "[i]f a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the

time of the disability is not included in the limitations period."

■ The purpose of the "unsound mind" tolling serves to protect persons without access to the courts and who are unable to participate in, control, or understand the progression and disposition of their lawsuit. *Hargraves v. Armco Foods, Inc.,* 894 S.W.2d 546, 548 (Tex.App.—Austin 1995, no writ); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 755 (Tex.1993).

■ Porter seeks to sustain his summary judgment burden by his own declaration, his discharge summary from Charter–Provo (which is proved up by the declaration of Porter's attorney), and the declaration of Rosemonde Maloney, a clinical social worker from California. The court has concluded that Porter has not borne his summary judgment burden on the unsound mind issue.

There is nothing in the discharge summary, which is dated June 23, 1989, that would remotely suggest that in June 1989 Porter was suffering from any condition that would have prevented him at that time from cooperating with an attorney, or participating in, controlling, or understanding the progression and disposition of a lawsuit. Porter's condition at discharge was described as follows:

### CONDITION AT DISCHARGE

Student was very positive, very open, and very responsive to the therapeutic intervention, verbalizing positive regards in relationship to remaining drug-free and attending school and doing well. He was a very positive individual as he left the program.

Plaintiff's Response and Brief in Support Thereof to Defendant Charter–Provo School, Inc. d/b/a Provo Canyon School's Motion for Summary Judgment and Motion for Continuance Under Rule 56(f), Ex. B, tab 1 at 3. Much less is there any summary judgment evidence that would support a finding that, by the time Porter became 18 years of age in May 1992, he did not have enough mental capacity to participate in, control, or understand the progression and disposition of a lawsuit. Porter's declaration makes clear that he had full awareness as they were occurring of the facts upon which he bases his claims in this action. The circumstances that his self-image was worsened and he became moodier and more depressed and turned into an alcoholic is not evidence that he did not have the capacity to properly participate in litigation. Moreover, Porter seldom defines in his declaration the date or dates of the existence of the conditions he describes. When he does use a date, such as the date used in paragraph 17 of the declaration, it often is the date of an event prior to the time he became 18 years of age. Conclusions, such as the one expressed in paragraph 17 of Porter's declaration, that "[e]ven with this legal warning I was not able to completely control or manage my legal affairs," do not get the job done for Porter. They are so broad and general as to be meaningless in the context of the applicable test.

The most pointed statement Porter makes in support of his unsound mind tolling theory is in paragraph 20 of his declaration, which says:

20. Due to the extreme abuse I experienced, in concert with my severe emotional disturbances, exacerbated by substance abuse, it was impossible for me [to] participate in, manage and control a lawsuit like this one.

*Id.,* Ex. A at 5. Conclusory statements of this kind "will not suffice to require a trial." *Travelers Ins. Co. v. Liljeberg Enter., Inc.,* 7 F.3d 1203, 1207 (5th Cir.1993) (citing *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986)). Moreover, Porter's statement is in the nature of an expert medical opinion, which has no probative effect given by a witness who is not shown to have the requisite expertise. While the Fifth Circuit has approved reliance in support of a motion for summary judgment on an expert opinion affidavit of a party, it did so because the party was shown to have expertise on the subject of the expert opinion given in the affidavit. *Rodriguez v. Pacificare of Tex., Inc.,* 980 F.2d 1014, 1019 (5th Cir.), *cert. denied,* 508 U.S. 956, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993). The court has found no case authority that approves of reliance on an opinion affidavit of a party if the party is not shown

to have the requisite expertise to form the opinion or, if it is in the nature of a lay opinion, the party fails to provide factual support for the opinion. *See Pedraza v. Jones,* 71 F.3d 194, 197 (5th Cir.1995) (holding that a party's affidavit purporting to give his "lay opinion" did not raise an issue of fact when the affidavit contained only conclusory statements). Porter does not provide a sufficient factual basis for the opinion he states in paragraph 20, nor is there any summary judgment evidence that he is qualified to render such an opinion.

For Porter to prevail on his unsound mind tolling theory, he would have to adduce at least either evidence of specific facts that would enable the court to find that when he became 18 years of age he did not have the mental capacity to pursue litigation or a fact-based expert opinion to that effect. He has failed to do either. The declaration of Ms. Maloney does not serve as such an opinion. Rather, she speaks in generalities, and never makes reference to Porter. She acknowledges in her affidavit that her professional opinion is that "each person who experiences abuse, like those persons at the Provo Canyon School, are affected differently." *Id.,* Ex. C at 8. But, she renders no opinion on the subject of how Porter was affected by the treatment he received.

The court does not consider the article from *Archives of Psychiatric Nursing,* which is a part of Exhibit D to Plaintiff's Response to Charter–Provo's Motion for Summary Judgment, to have any probative effect. First, the court does not take judicial notice of the article, as Porter has requested. Second, the article deals only in generalities, and would not provide the basis for a fact-finder to make any fact finding applicable to Porter's mental capacity to pursue litigation.

There simply is no summary judgment evidence that would permit a reasonable fact-finder to find that Porter did not have the requisite mental capacity when he became 18 years of age. If at the end of trial the record were to be the same as it is at this summary judgment stage, the court would be required to direct a verdict in favor of Charter–Provo on the unsound mind tolling theory.

### 3. *Porter's Discovery Rule Tolling Theory.*

 As previously noted, the discovery rule does not apply to the statute of limitations applicable to Porter's health care liability claims. However, even if it did, Porter would not benefit in this case. In *Willis,* the Texas Supreme Court explained that:

> The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury.

760 S.W.2d at 644. "The discovery rule expressly mandates the [plaintiff] to exercise reasonable diligence to discover facts of negligence or omission." *Id.* n. 2. It is an exception to the general rule that the accrual period is measured from the time of the injury. *Timberlake v. A.H. Robins Co., Inc.,* 727 F.2d 1363, 1364 (5th Cir.1984). This discovery rule exception applies to federal law claims as to which a state statute of limitations is borrowed. *Cathedral of Joy,* 22 F.3d at 717. The rule is viewed, at least under Texas law, to be a plea in confession and avoidance. *Woods,* 769 S.W.2d at 517.[6]

 The discovery rule does not suspend the running of the statutory period "until the plaintiff learns that the defendant's conduct may be wrongful." *Timberlake,* 727 F.2d at 1365. In other words, the discovery rule contemplates discovery of the injury and does not suspend the running of the limitations period until the plaintiff discovers all the elements of a cause of action. *Moreno,* 787 S.W.2d at 357. Nor does the discovery rule suspend the running of limitations until the date of discovery of the responsible party. *Id.* Notwithstanding the discovery rule, "[t]he accrual of the cause of action does not await the plaintiff's recognition that he has grounds for a lawsuit," *Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 583 (Tex.App.— Dallas 1991, writ denied), or discovery that

---

6. In *Woods,* the Texas Supreme Court rejected, *sub silentio,* its statement in *Weaver v. Witt,* 561

S.W.2d 792, 794 (Tex.1977), that the discovery rule is not a plea of confession and avoidance.

the defendant behaved tortiously, *id.* at 584, or recognition that the plaintiff might have a winning lawsuit, *id.* at 585.

 The court concludes that there is no summary judgment evidence that would support findings in favor of Porter on all facts essential to his discovery rule theory. No reasonable fact-finder could make a finding from the summary judgment evidence that Porter had not discovered the nature of his injury before he became 18 years of age, much less that he should not have discovered, in the exercise of reasonable care and diligence, the nature of his injury before that date.

### 4. *Porter's Fraudulent Concealment Tolling Theory.*

 Fraudulent concealment is an equitable doctrine that estops a defendant who concealed his wrongful conduct, either by lying about it or by failing to disclose it when under a duty to disclose, from asserting the statute of limitations. *Borderlon,* 661 S.W.2d at 908. The doctrine tolls the statute of limitations until the plaintiff "learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Id.* Fraudulent concealment requires "first, actual knowledge of the fact that a wrong has occurred, and, second, a fixed purpose to conceal the wrong from the patient." *Carrell v. Denton,* 138 Tex. 145, 157 S.W.2d 878, 879 (1942), *overruled on other grounds, Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967). *Accord Leeds v. Cooley,* 702 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In cases involving medical negligence claims subject to § 10.01 of art. 4590i, Texas courts have held that the duty to disclose ends when the physician-patient relationship ends. *See Thames v. Dennison,* 821 S.W.2d 380, 384 (Tex.App.—Austin 1991, writ denied); *Evans,* 741 S.W.2d at 508; *c.f. Russell v. Campbell,* 725 S.W.2d 739, 748 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). There is no reason to believe that the same rules would not apply to Porter's federal claims.

 To the extent Porter might have had a basis for a fraudulent concealment avoidance as to Charter–Provo, it ended no later than June 23, 1989, the date Porter was discharged from Charter–Provo. Therefore, the court concludes that Porter's reliance on the fraudulent concealment doctrine in avoidance of the limitations defense is unfounded as to all his claims. There is no summary judgment evidence upon which a finding to the contrary could be based. Because Porter's equitable estoppel theory stands or falls with his fraudulent concealment theory, his estoppel theory likewise is not supported by the summary judgment record.

### 5. *Porter's Duress and Coercion Theories.*

Though there is a question as to whether the duress avoidance theory urged by Porter could apply to any of the claims asserted in this case, the court has considered Porter's duress theory and has concluded that, even if it could apply, it would not benefit Porter.

 The test for duress is whether in reasonable probability an ordinary person would have lost his free will to bring an action under the circumstances. *Pierce v. Estate of Haverlah,* 428 S.W.2d 422, 428 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). Porter does not present any evidence that he was threatened or intimidated by any actions of Charter–Provo subsequent to his release from Charter–Provo. He contends, however, that he remained intimidated following his release from Charter–Provo. But, the evidence does not support those contentions. The only reasonable finding that can be made from the undisputed summary judgment evidence would be that by the time Porter was released from Charter–Provo he had sufficient information that he should have discovered the facts establishing his causes of action. Bearing in mind that the appropriate standard is an objective rather than subjective one, the court concludes that there is no summary judgment evidence that any duress would have prevented a person of ordinary prudence from exercising his own free will and judgment in filing suit. Certainly, there is no evidence that when Porter became 18 years of age he was suffering

from any duress, or any coercion, related to the possibility of taking legal action against Charter–Provo, much less is there summary judgment evidence that, at that point in time, a person of *ordinary prudence would have* been prevented from exercising his own free will and judgment in filing suit.

### E. *All Claims Are Barred By Limitations.*

■ Apparently the parties are in disagreement when the tolling based on Porter's minority ended. Porter seems to maintain that it ended on his 18th birthday, May 30, 1992. Provo maintains that it ended the day before Porter reached age 18, May 29, 1992. In either event, all claims asserted by Porter that are subject to a two-year statute of limitations quite clearly are barred under the facts of this case.

If Porter is correct on the ending date of his minority tolling, the filing of his suit on May 30, 1996, would have been timely as to any claim governed by a four-year statute of limitations. If Charter–Provo is correct, the institution of the action on May 30, 1996, was one day too late. The key statutory provisions are §§ 16.001 and 16.004 of the Texas Civil Practice & Remedies Code. In pertinent part, § 16.001 reads:

> (a) For purposes of this subchapter, a person is under a legal disability if the person is:
>
> (1) younger than 18 years of age, regardless of whether the person is married;
>
> . . . . .
>
> (b) If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in a limitations period.

Tex. Civ. Prac. & Rem.Code § 16.001 (Vernon 1986 & Supp.1997).

The operative part of § 16.004, the Texas four-year statute of limitations, reads:

> (a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:

*Id.* § 16.004 (Vernon 1986).

In *Weiner v. Wasson,* which presented the question of when minority tolling ended in a case controlled by the two-year statute of limitations, the Texas Supreme Court said and held:

> Sections 16.001 and 16.003 of the Texas Civil Practice and Remedies Code together provide a general statute of limitations for minors' personal injury claims. Section 16.003 establishes a two-year limitations period, but section 16.001 tolls this period until the minor reaches age eighteen. Taken together, these sections require a minor to file a claim *before reaching age twenty* for personal injuries sustained during the period of minority.
>
> . . . . .
>
> We therefore hold that *Wasson* had two years after attaining age eighteen to bring suit for the acts of medical malpractice allegedly committed during his minority.

900 S.W.2d 316, 321 (Tex.1995) (emphasis added).

The holding of the *Weiner* court is compelled by the statutory language. Minority tolling applies only so long as the minor is under the disability of minority. He is under the disability of minority only so long as he is "younger than 18 years of age." Thus, there is no tolling on the date when he becomes 18 years of age. Instead, on that date the applicable statute of limitations has started to run. Porter's reliance on Rule 6(a) of the Federal Rules of Civil Procedure as extending the limitations period by one day is ill-placed. The issue is one of tolling of limitations, which does not fit within the Rule 6(a) scheme of things. Tolling defines when limitations is not running on an already-accrued cause of action. In the "tolling" context, there is no "day of [ ] act, event, or default from which the designated period of time begins to run." Rule 6(a), Fed.R.Civ.P. Rather, the determination to be made is when the tolling period ends.

Porter suggests that the actual holding in *Weiner* conflicts with the earlier statement in the *Weiner* opinion, which was unnecessary for the *Weiner* holding, that "these sections require a minor to file a claim *before reaching age twenty* ...." *Id.* at 321 (emphasis added). The court agrees that the holding in

*Weiner* could be ambiguous, and that the more specific language that preceded it was not necessary to the *Weiner* opinion. However, a reading of the *Weiner* holding, in context with the language of the statutes and the more specific language of the *Weiner* opinion, has caused the court to conclude that when the Texas Supreme Court is required to make a direct holding on the issue it will hold that when a cause of action possessed by a person accrues during the person's minority, and assuming that the only tolling is the tolling based on the disability of minority, the claim must be brought by that person before reaching the age 20 (if a two-year statute applies) or before reaching the age 22 (if a four-year statute applies).

In support of his argument that his institution of this action on his 22nd birthday was timely as to the claims governed by a four-year statute of limitations, Porter has called the court's attention to language used by the Texas Supreme Court in its 1996 decision in *S.V. v. R.V.*, as follows:

> The enactment of statutes of limitations is, of course, the prerogative of the Legislature. At the time this case was filed and tried, the applicable statute was the one governing personal injury actions generally, which provided: "A person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3252, *formerly codified as* Tex. Civ. Prac. & Rem.Code § 16.003(a). The code contains two other provisions relevant to this case. One is: "If a person entitled to bring a personal action is under a legal disability when the cause of action accrues, the time of the disability is not included in the limitations period." Tex. Civ. Prac. & Rem.Code § 16.001(b). The other is: "For the purposes of this subchapter, a person is under a legal disability if the person is (1) younger than 18 years of age...." *Id.* § 16.001(a). Thus, *a person has until his or her twentieth birthday (or the next business day. id. § 16.072) to bring suit for personal injury from sexual assault if—... —the cause of action "accrued" while the person was a minor.*

933 S.W.2d 1, 3 (Tex.1996) (emphasis added). The emphasized language matches the holding of the Texas Supreme Court in *Weiner* for ambiguity. But, again, the language must be read in context with the more specific language used in *Weiner* and the wording of the statutes themselves. When thus read, the proper conclusion to be reached is that the suit must be brought before the plaintiff has reached age 20, in the case of a two-year statute, or age 22, in the case of a four-year statute.

The court concludes that this action was instituted more than four years after the minority tolling ended, with the consequence that all of Porter's claims are barred by limitations.

## VI.

### ORDER

The court ORDERS that Charter–Provo's motion for summary judgment be, and is hereby, granted.

The court further ORDERS that all of Porter's claims against Charter–Provo be, and are hereby, dismissed with prejudice.

The court further ORDERS that all costs of court be, and are hereby, taxed against Porter.

### ORDER

Came on for consideration the motion of plaintiff, Steven Spencer Porter, ("Porter") to alter or amend judgment and for new trial. Defendant Charter-Provo School, Inc., d/b/a Provo Canyon School ("Charter-Provo") has filed a response to plaintiff's motion. The court, having considered the motion, Charter-Provo's response, the record, and applicable authorities, finds that the motion should be denied.

As his first point of error, Porter argues that this court incorrectly applied the statute of limitations provided in the Medical Liability and Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 1997), to his supplemental claims. Specifically, Porter contends for the first time that Charter-Provo is not a health care provider as defined by Art. 4590i, § 1.03(a)(3). Even should the

1442

court accept plaintiff's belatedly presented contention, all of his supplemental claims would still be subject to a two-year statute of limitations.

Therefore, the court ORDERS that the motion of plaintiff, Steven Spencer Porter, to alter or amend judgment and for new trial be, and is hereby, denied.