John J. HELTON, Plaintiff–Appellant,

v.

William P. CLEMENTS, Governor, State of Texas, et al., Defendants–Appellees.

No. 86–1813
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 18, 1987.
Rehearing Denied Jan. 14, 1988.

William J. Wade, Cecil C. Kuhne, Crenshaw, Dupree & Milam, Lubbock, Tex., for Tom Nivens.

McWhorter, Cobb & Johnson, Lubbock, Tex., for Southwestern Newspapers.

David E. Hudson, George R. Hall, Hull, Towill, Norman & Barrett, Augusta, Ga., D. Thomas Johnson, Lubbock, Tex., for Southwestern Newspapers, May and Marshall.

Before RUBIN, REAVLEY, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A discharged state employee seeks redress against 42 state defendants and damages for defamation against various private persons. The district court rendered summary judgment rejecting all claims. We find that the judgment was correct in all respects except that summary judgment in favor of two of the state employees was not warranted on the present record, and we remand the case for further proceedings as to those two only.

**I.**

John J. Helton was terminated on March 30, 1982, from his position as a psychologist at the Lubbock State School, an institution operated by the Texas Department of Mental Health and Mental Retardation. He filed suit pro se on June 11, 1984, against 42 state officials and organizations, contending that they had conspired to deprive him of, and by discharging him and by taking various other actions against him had deprived him of, his constitutional rights to freedom of speech, to petition for redress of grievances, and to due process. The defendants named in his group of charges were the State of Texas; the Governor of Texas; the Attorney General of Texas; the Texas Department of Mental Health and Mental Retardation; fourteen members of the Texas House of Representatives serving on a committee entitled "Special Committee to Study Texas Depart-

John J. Helton, pro se.

James C. Todd and Olivia B. Ruiz, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for State and Short.

ment of Mental Health and Mental Retardation"; Senator E.L. Short; J.S. Barkley–Booher, Manager of Human Services for the Governor's budget office; the chairman and eight members of the Texas Board of Mental Health and Mental Retardation; the commissioner, acting commissioner, deputy commissioner, and assistant deputy commissioner of the Department of Mental Health; John Gladden, the Superintendent of Lubbock State School; seven employees of Lubbock State School; Sue Dillard, Chief of Quality Control for the Department; and Don E. Foster, Grievance Hearing Officer.

Helton also joined claims for defamation against several private individuals: Tom Nivens, the President of the Lubbock State School Parents Association; the publisher of the Lubbock Avalanche Journal newspaper; the associate editor of that paper; and Philip Marshall, who had written a letter that was published in the newspaper. The district judge dismissed the claim against Nivens on the ground that the complaint failed to state a claim for which relief could be granted. Various state officials filed a motion to dismiss invoking, among other defenses, qualified official immunity. The district judge ruled that these motions would be carried with the case. These defendants appealed, and this court held that the claims of immunity should be determined before the case proceeded to trial.[1] Upon remand, the district court dismissed the claims against 16 state officials, the State of Texas, and the Department of Mental Health on the grounds of qualified immunity, Eleventh Amendment immunity, and legislative immunity.

Thereafter, the 18 state officials who remained in the case filed a motion to dismiss or for summary judgment on the grounds that the complaint failed to state a claim for which relief could be granted and was barred by the statute of limitations. The district court first decided to defer judgment on the motion until the trial had been completed, but after hearing four hours of testimony, it granted the motion on the ground that all of Helton's claims were barred by the Texas two-year statute of limitations, except for a claim that he had been unjustly denied unemployment benefits on October 6, 1982.

Helton claimed that the actions of two of the state-official defendants, Landers and Rollins, had caused the illegal and unjust denial of his unemployment benefits, and that this was an overt act of the conspiracy against him. The district court held that this did not constitute a constitutional deprivation, because Helton had no constitutional right to receive such benefits that would be cognizable in a civil rights action in federal court. The court advanced an additional reason to dismiss the charges against Landers and Rollins. Helton had not alleged that their acts had caused him to be denied unemployment benefits because of his exercise of his rights to free speech but had charged only that their acts constituted an overt act in the conspiracy, and this did not form a basis for a civil rights recovery.

## II.

Civil rights actions brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 are deemed analogous to Texas tort actions, and therefore, the applicable limitations period is the two years fixed by Article 5526 of the Vernon's Texas Annotated Statutes, now recodified as Tex.Civ.Prac. & Remedies Code Ann. § 16.003 (Vernon 1986).[2]

Although state law controls which limitations period applies, federal law determines when a cause of action accrues.[3] Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury

1. *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986).

2. *Kline v. North Texas State University*, 782 F.2d 1229, 1232 (5th Cir.1986); *Moore v. El Paso County*, 660 F.2d 586, 589 (5th Cir.1981), *cert.* denied, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982).

3. *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980), *on rehearing*, 644 F.2d 1023 (5th Cir. 1981).

that is the basis of his complaint.[4] Thus, the statute of limitations begins to run from the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.[5]

▮ The statute of limitations governing Helton's claims against the state defendants, therefore, began to run March 30, 1982, the day he was terminated. In his First Amended Complaint, Helton states that he began to suspect as early as 1979 that his rights were being violated. He alleges that in 1979, he and his supervisor instituted new treatment programs, and that these were intentionally sabotaged by defendant Gladden, the superintendent of Lubbock State School. Helton admits he knew of the alleged sabotage and claims his supervisor resigned as a result of them.

Helton has made no claim that any of the state defendants except Landers and Rollins acted within the two-year period. He knew, or at least had reason to know, of all the acts except the denial of his unemployment benefits no later than May 1982, when he was given a grievance hearing. Yet he did not file suit until June 11, 1984, two and a half months after the limitation period had run.

▮ In an effort to avert the statute of limitations bar, Helton asserts that the action by Landers and Rollins was the last overt act committed in furtherance of the conspiracy against him and that the statute of limitations did not begin to run until that time. His characterization of the events as occurring in the course of a conspiracy does not extend the time when the statute of limitations begins to run. While the statute of limitations for a federal criminal conspiracy charge does not begin to run until the last overt act pursuant to the conspiracy has been committed,[6] the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy.[7] The panel decision of this court in *Slavin v. Curry,* on which Helton relies, borrowed the time of accrual from state law,[8] and thus it has been implicitly disapproved by the Supreme Court and by numerous panels of this court.[9]

As the Second Circuit held in *Singleton v. City of New York:*

> Characterizing Defendants' separate wrongful acts as having been committed in furtherance of a conspiracy ... does not postpone the accrual of claims based on individual wrongful acts.... To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.[10]

Therefore, any cause of action against the defendants accrued as soon as plaintiff knew or should have known of the overt acts involved in the alleged conspiracy. Helton knew by March 30, 1982, of his termination, the alleged denial of due process, and the alleged deprivation of his property interest. Letters he wrote before that date alleging a conspiracy evidence his knowledge of the alleged conspiracy at that time.

4. *Rubin v. O'Koren,* 621 F.2d at 116; *Drayden v. Needville Independent School District,* 642 F.2d 129, 132 (5th Cir.1981).

5. *Rubin v. O'Koren,* 621 F.2d at 116; *Singleton v. City of New York,* 632 F.2d 185, 192 (2nd Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

6. *United States v. Parker,* 586 F.2d 422, 430 (5th Cir.1978).

7. *Kadar Corporation v. Milbury,* 549 F.2d 230, 234 (1st Cir.1977); *Hoffman v. Halden,* 268 F.2d 280, 295 (9th Cir.1959).

8. 574 F.2d 1256, 1261 (5th Cir.1978), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978), *overruled in part on other grounds in Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 (5th Cir.1979) (en banc).

9. *Chardon v. Fernandez,* 454 U.S. 6, 7–8, 102 S.Ct. 28, 28–29, 70 L.Ed.2d 6 (1982); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Longoria v. City of Bay City, Texas,* 779 F.2d 1136, 1138 (5th Cir. 1986); *Rubin v. O'Koren,* 621 F.2d at 116; *Lavellee v. Listi,* 611 F.2d 1129, 1130 (5th Cir.1980).

10. 632 F.2d at 192.

In a further effort to avoid the death knell of the statute of limitations, Helton claims that the alleged conspiracy caused injury to his mental health and rendered him unable to assert his rights until July 1983. He asserts that the statute of limitations should therefore be tolled until July 1983, basing this contention on the "disability" tolling provisions of former V.A.T.S. Art. 5535, now recodified as Tex.Civ.Prac. & Remedies Code Ann. § 16.001 (Vernon 1986). That statute provides that when a person is of unsound mind at the time his cause of action accrues, the applicable statute of limitations will be tolled until the disability is removed.

The district court, however, held that since Helton's mental disability did not arise until several months after his termination, his claim was barred as a result of sections (b) and (d) of the tolling statute. These sections provide that in order for a plaintiff to be entitled to a tolling of the statute of limitations, he must be "under a legal disability *when the cause of action accrues*,"[11] and that "[a] disability that arises after a limitations period starts does not suspend the running of the period."[12]

■ We need not consider Helton's contention that this restriction on tolling is inconsistent with the broad remedial purposes of the civil rights statutes, for in any event his allegations are insufficient to raise a genuine issue concerning whether he was "of unsound mind" under the tolling statute. Although no Texas case defines the meaning of the term "unsound mind" as used in § 16.001, the purpose of the statute is "to suspend limitation with respect to persons who have no access to the courts."[13] Generally, the term, "as used in this setting, has been interpreted to mean that such a person is unable to manage his affairs or to understand his legal rights or liabilities."[14] The facts alleged by Helton do not show that his psychological depression rendered him unable to manage his affairs or comprehend his legal rights, only that it distracted him from pursuing his cause of action. Indeed, he undertook other activities such as going back to graduate school during this period. Depression of this sort has been held to be insufficient to toll the statute of limitations when the plaintiff continued to carry out regular activities.[15] Even if Helton's hospitalization constituted sufficient evidence to raise a genuine issue as to whether the statute should be tolled for the period he was in the hospital, his hospital stay was only a month long and thus in any case was insufficient to bring his suit within the statutory limit.

Helton also complains that the district court erred in failing to address the issue of defendant Miller's alleged evasiveness in attempting to conceal the actions against Helton. While the district court did not specifically rule on this charge, we see no reason why Miller's alleged tactics would have tolled the statute when Helton was fully aware of his injury at the time it occurred.

If the district court did, as Helton alleges, reject exhibits without examining them, this would have been error; but it was harmless, for nothing in the exhibits would have tolled the statute of limitations, and as Fed.R.Civ.P. 61 provides, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." This is buttressed by Fed.R.Evid. 103, which forbids error to be "predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

As a result, all of Helton's claims against the state defendants except the claim against Landers and Rollins were barred by the two-year statute of limitations.

---

11. Tex.Civ.Prac. & Remedies Code Ann. § 16.001(b) (Vernon 1986) (emphasis added).

12. Tex.Civ.Prac. & Remedies Code Ann. § 16.001(d) (Vernon 1986).

13. *Adler v. Beverly Hills Hospital,* 594 S.W.2d 153, 158 (Tex.Civ.App.1980).

14. *Allen v. Powell's International, Inc.,* 21 Ariz. App. 269, 518 P.2d 588, 589 (1974), *citing* 51 Am.Jur.2d Limitation of Actions § 187 at 755; 54 C.J.S. Limitation of Actions § 242 at 269.

15. *Allen v. Powell's International, Inc.,* 518 P.2d at 589.

Therefore, we need not discuss at this time whether the state defendants are also protected by their various immunity defenses.

### III.

Helton contends that he was deprived of a property interest without due process of law and that the judge did not hear all the evidence and therefore could not properly have denied his claim. The issue was, however, raised by a motion for summary judgment, and Helton does not allege any facts that were not before the court.

■ To be entitled to due process in connection with the termination of a government job, one must have a "property interest" in continued employment.[16] It is not clear what Helton contends that he has been deprived of. He did not allege that he had a property interest in continued employment. Even if he had such a property interest, he was not deprived of it without procedural due process. He faults the grievance procedure for three deficiencies: (1) his supervisors intended to fire him for illegitimate reasons; (2) he was pressured to terminate the hearing promptly because defendant Foster, the hearing officer, had a long drive home; and (3) Foster permitted key witnesses to evade Helton's questions. While state law determines whether a claimant has a property interest, federal law determines the minimum procedures constitutionally required.[17]

■ In *Cleveland Board of Education v. Loudermill*,[18] the Supreme Court defined the minimum procedures due prior to the discharge of a "tenured public employee." A pre-termination hearing should be held. This hearing need not be elaborate, and it may be "something less" than a full evidentiary hearing, in which the employee is entitled to a full administrative hearing and judicial review. In essence, this pre-termination hearing should be an initial inquiry whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.[19]

■ The essential requirements of due process are notice and an opportunity to respond and present reasons why the proposed action should not be taken. The employee is entitled to notice, written or oral, of the charges against him, an explanation of the employer's evidence, and an opportunity to respond.[20]

The district court found (and Helton does not now deny) that Helton received a written notice from defendant Gladden on March 24, 1982 (which the district judge erroneously referred to as March *26*, 1982). In this letter, Gladden outlined the allegations concerning Helton's job performance. Gladden closed the letter by stating: "Before I decide what action, if any, would be appropriate in these matters, I would like to have you provide me with any information which you feel is relevant to these allegations, or which might mitigate the circumstances." This letter provided Helton with an outline of his job performance, notice that action against him was contemplated, and an opportunity to respond either orally or in writing.

On March 30, Gladden wrote Helton to inform him of the decision to terminate his employment with Lubbock State School. This letter gave him the reasons for his termination. In May 1982, Helton was accorded a grievance hearing at which he chose to represent himself. He was allowed to call witnesses and present evidence in his favor.

Helton therefore received all the procedural due process to which he would have been entitled even if he had been vested

---

**16.** *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972).

**17.** *Cleveland Board of Education v. Loudermill,* 470 U.S: 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

**18.** 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**19.** *Cleveland Board of Education v. Loudermill,* 105 S.Ct. at 1495–96.

**20.** *Id.*

with a property interest in his employment.[21]

## IV.

The claims against Landers and Rollins for causing Helton to be denied unemployment benefits were presented within the time allowed by the statute of limitations. Considering the barrage of claims made by Helton, we understand the difficulty faced by the district court and comprehend why it may have been hard to focus on the claims against Landers and Rollins. Nevertheless, we find the reasons given for rejecting them erroneous (although there may be other grounds, such as official immunity, for doing so), and we therefore remand for further proceedings with regard to these claims.

Contrary to the district court's ruling, the denial of unemployment insurance may constitute a constitutional deprivation if it was predicated on Helton's exercise of his right to free speech. In *Sherbert v. Verner*,[22] reaffirmed this past term in *Hobbie v. Unemployment Appeals Commission of Florida*,[23] the Supreme Court held that a state may not infringe liberties of religion or expression by denying or placing conditions on unemployment benefits.[24] We believe that Helton's complaint, read liberally and as a whole, does allege that Landers and Rollins caused him to be denied unemployment benefits because of his exercise of free speech. While their acts were presented as overt acts in furtherance of a conspiracy rather than as separate counts, Helton alleged that "[a]ll acts taken against the plaintiff as described in this complaint were acts taken in furtherance of the same civil conspiracy against the plaintiff's right to free speech." Moreover, Helton's conspiracy allegations under § 1983 (as opposed to § 1985) do not require a showing of class-based discrimination,[25] only a showing that Landers and Rollins actually deprived him of his right to free speech.[26]

## V.

The claims against Nivens and Marshall are that they joined in the state officials' conspiracy and defamed Helton by writing letters that were published in the Avalanche Journal on April 18 and 20, 1982. It is patent that even if a claim had been stated against these two defendants, the statute of limitations had run by April 1984. The district court was also correct in dismissing the claims against the publisher of the Avalanche Journal and Kenneth May because they were barred by the one-year limitation provision of art. 5524, V.A.T.S., or the two-year limitation provision of art. 5526, V.A.T.S.

For these reasons, the judgment is affirmed in all respects except insofar as the charges against Landers and Rollins are concerned. Those claims are remanded for further proceedings. Helton is to bear all costs of all appellees except Landers and Rollins, who are to bear their own costs while Helton is to bear his as to those claims.

---

**21.** *Cf. Wheeler v. Mental Health and Mental Retardation Authority,* 752 F.2d 1063, 1067–68 (5th Cir.), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985).

**22.** 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

**23.** —— U.S. ——, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987).

**24.** *Sherbert v. Verner,* 374 U.S. at 404, 83 S.Ct. at 1794.

**25.** *Crowe v. Lucas,* 595 F.2d 985, 990 (5th Cir. 1979).

**26.** *Farrar v. Cain,* 756 F.2d 1148, 1151 (5th Cir. 1985).