# 2002 DTA 123

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL III**

COMISION PARA VENTILAR QUERELLAS MUNICIPALES EN RELACION A QUERELLA CIVIL NUM. 83 CONTRA FRANCISCO JAVIER RIVERA TORO INCOADA POR LA HON. SILA MARIA CALDERON, GOBERNADORA DE PUERTO RICO
Recurrida

V.

FRANCISCO J. RIVERA TORO
Peticionario

Núm. KLCE-2002-00413

San Juan, Puerto Rico, a 9 de agosto de 2002

Panel integrado por su Presidente, Juez Ortiz Carrión
y los Jueces Segarra Olivero y Negroni Cintrón

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El peticionario, Francisco Javier Rivera Toro, nos solicita la revisión de una sentencia emitida por el Tribunal de Primera Instancia, Sala de San Juan, mediante la cual se ordenó la suspensión de empleo y sueldo del peticionario como alcalde del Municipio de Hormigueros hasta que finalizaran los procedimientos ante la Comisión para Ventilar Querellas Municipales, en adelante Comisión.

Por los fundamentos que más adelante exponemos, denegamos la expedición del auto solicitado.

## I

El 29 de noviembre de 2001, la Gobernadora de Puerto Rico, Hon. Sila María Calderón (en lo sucesivo la Gobernadora, presentó ante la Comisión una querella juramentada contra el aquí peticionario, alcalde del Municipio de Hormigueros en ese momento. En dicha querella se le imputó al peticionario que en el desempeño de sus funciones incurrió en actuaciones inmorales e ilegales violatorias de las normas mínimas de sana administración pública y altamente lesivas y detrimentales a los intereses del municipio, que ameritaban su destitución como alcalde. Específicamente, se alegó que dichas actuaciones configuraban los delitos graves de Soborno y Preparación de Escritos Falsos, según tipificados en los Artículos 209 y 241 del Código Penal, 33 L. P.R.A. secs. 4360 y 4437, respectivamente. Además, adujo la Gobernadora que la conducta del peticionario era una prohibida y tipificada como delito grave en los Artículos 3.2(c), 3.8(a)(1), 4.2, 4.4, 4.11(a)(1) de la Ley Núm. 12 de 24 de julio de 1985, según enmendada, 3 L.P.R.A. secs. 1822(c), 1828(a)(1), 1832, 1834, 1841(a)(1), conocida como la Ley de Etica Gubernamental del Estado Libre Asociado de Puerto Rico.

La Gobernadora solicitó que la Comisión acogiera la querella y que recurriera, en protección del interés público, ante el Tribunal de Primera Instancia, Sala de San Juan, mediante el Procedimiento Especial dispuesto en el Artículo 18.006 de la Ley Núm. 81 del 30 de agosto de 1991, 21 L.P.R.A. sec. 4856, conocida como la Ley de Municipios Autónomos, para que dicho foro judicial ordenara la suspensión del peticionario de su cargo y sueldo mientras se dilucidaban los cargos imputados en la querella. Acompañó con la querella evidencia relacionada con los cargos imputados y sus correspondientes anejos, los que incluyen declaraciones juradas.

El 27 de diciembre de 2001 se celebró una vista argumentativa ante la Comisión a la cual comparecieron ambas partes representadas por sus respectivos abogados. El peticionario contestó la querella y negó los hechos esenciales alegados en la misma.

Así las cosas, la Comisión emitió una resolución el 10 de enero de 2002 en la que dictaminó que el interés público requería que se recurriera al referido Procedimiento Especial, a los fines de que se determinara si la magnitud de los cargos imputados justificaban la suspensión solicitada, mientras se conducían los procedimientos administrativos ante la Comisión. Se ordenó radicar ante el Tribunal todo el expediente de la querella.

De conformidad con la referida resolución, el 11 de enero de 2002, la Comisión presentó ante el Tribunal recurrido una petición, a tenor con el Procedimiento Especial dispuesto en Artículo 18.006, *supra*. Acompañó con su petición lo siguiente: (a) la resolución de la Comisión; (b) la querella presentada por la Gobernadora ante la Comisión y sus correspondientes anejos que incluyen declaraciones juradas; (c) la transcripción de los

procedimientos ante la Comisión en la vista celebrada el 27 de diciembre de 2001; (d) la copia de la minuta de la misma y otros documentos que evidentemente son parte del expediente de la Comisión.

El 15 de enero de 2002, el peticionario le solicitó al Tribunal recurrido la celebración de una vista evidenciaria donde las partes pudieran presentar la evidencia que estimaran pertinente a la procedencia de la suspensión de cargo y empleo promovida. Adujo que era indispensable la celebración de una vista evidenciaria para que el Tribunal pudiera adjudicar la solicitud presentada por la Comisión.

Mediante orden emitida el 15 de enero de 2002, y notificada al día siguiente, ordenó el emplazamiento del peticionario con copia de la petición y la orden, y se señaló la vista para el 25 de enero siguiente. El peticionario fue emplazado el 24 de enero de 2002. Celebrada la vista ante el Tribunal el 25 de enero de 2002, se le concedió término al peticionario para que expusiera su posición. El 4 de febrero de 2002, el peticionario se opuso a la petición solicitada, y acompañó a su solicitud un extenso apéndice.

El 12 de febrero de 2002, el Tribunal *a quo* dictó la sentencia objeto del recurso del título, en la que se concluye que la magnitud de los cargos imputados requería la suspensión de empleo y sueldo del peticionario mientras se conducían los procedimientos administrativos ante la Comisión, por el fundamento de que era necesario tomar medidas que protegieran los bienes municipales, ante la íntima vinculación de los hechos imputados con la administración del municipio.

Inconforme, el peticionario acude ante nos y le imputa al Tribunal de Primera Instancia haber errado:

*"...al decretar la suspensión de cargo y sueldo del aquí peticionario y el cual se desempeñaba como Alcalde del Municipio de Hormigueros, quebrantando sus derechos propietarios garantizados por los postulados constitucionales de un debido proceso de ley, según éstos están protegidos por el Art. II, Sec. 7 de la Constitución de Puerto Rico y las Enmiendas V y XIV de la Constitución de Estados Unidos; así como su derecho al sufragio garantizado por el Art. II, Sec. 2 de la Constitución de Puerto Rico.*

*...al suspender de cargo y sueldo al peticionario considerando únicamente una evaluación de los cargos imputados y tomándolos como ciertos, descartando toda la evidencia presentada por éste y la cual en ningún momento fue contradicha por la querellante, la Secretaria de Justicia o la propia Comisión.*

*...al evaluar los criterios enumerados en el Art. 18.006 de la Ley Núm. 81 del 30 de agosto de 1991, 21 L.P. R.A. Sec. 4856, para suspender, como suspendió, de empleo y sueldo al aquí peticionario."*

Luego de varios trámites procesales, la Gobernadora de Puerto Rico, representada por el Procurador General de Puerto Rico, presentó su alegato.

## II

En su primer señalamiento de error, el peticionario alegó que el Procedimiento Especial dispuesto en el Art. 18.006, *supra*, requiere una vista más amplia que la vista informal a que se hace referencia en el caso de *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Al peticionario se le concedió una vista argumentariva celebrada por la Comisión el 27 de diciembre de 2000. Por lo tanto, la acción judicial contemplada en el Art. 18.006, *supra*, no puede ser una mera repetición de la vista informal que hizo la Comisión.

La Comisión fue creada con el propósito de entender en los procesos disciplinarios instados en contra de los alcaldes, y así evitar lesiones al interés público. La Comisión tiene la facultad para *"[e]ntender y resolver las querellas o cargos formulados contra cualquier Alcalde por el Gobernador de Puerto Rico, el Director de la Oficina de Etica Gubernamental, la Asamblea o por cualquier persona"*. Artículo 18.002(a) de la Ley Núm. 81,

*supra*, 21 L.P.R.A. sec. 4852(a). Además, está facultada para ordenar la destitución de un alcalde cuando resulten probados los cargos en su contra. *Aponte v. Alcalde de San Lorenzo*, 146 D.P.R. 675, 682-683 (1998).

Entre otras razones, un Alcalde podrá ser destituido de su cargo por *"[i]ncurrir en actos ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos en el desempeño de sus funciones"*. Artículo 3.008 de la Ley Núm. 81, *supra*, 21 L.P.R.A. sec. 4108. La Comisión es el foro administrativo que debe realizar en primera instancia dicha determinación, ya que *"presuntivamente [sic] está particularmente facultada para determinar lo que es 'conducta inmoral o actuaciones ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos, en el desempeño de sus funciones"*. *Aponte v. Alcalde de San Lorenzo, supra*, pág. 683; *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 726-727 (1982). Se ha resuelto que dicha determinación es una cuestión de derecho. *Robledo, Alcalde v. C.V.Q.M.*, 95 D.P.R. 1, 14 (1967). En su consecuencia, esa determinación es revisable por el Tribunal de Circuito de Apelaciones.

Para que la conducta incurrida por un alcalde conlleve su destitución debe ser una:

*"(a) ...que afecte los intereses del pueblo y los derechos de sus habitantes; (b) que está relacionada con la administración del cargo; y (c) que sea una de naturaleza sustancial. En específico, de tratarse de una actuación negligente, ésta debe ser manifiesta, injustificable y de carácter serio; y si lo que se imputa es una actuación ilegal que implique abandono, éste debe ser algo más que una mera omisión o equivocación."* *Aponte v. Alcalde de San Lorenzo, supra*, pág. 685.

No obstante, el Art. 18.006 de la Ley Núm. 81, *supra*, le concede la facultad a la Comisión, si el interés público lo requiere, a recurrir al Tribunal para que éste determine si se requiere la suspensión de cargo y sueldo del Alcalde mientras se conducen los procedimientos ante la Comisión. La disposición no dispone como se conducirán los procedimientos ante el Tribunal de Instancia. Sólo dispone que tendrán prioridad a cualquier otro trámite, y los criterios que el tribunal debe considerar al evaluar la solicitud. El Artículo 18.006, *supra*, específicamente dispone:

*"Una vez presentados y notificados los cargos al Alcalde, formulados de acuerdo con lo dispuesto en la sec. 4854 de este título, si la Comisión determina que el interés público así lo requiere, podrá acudir ante la Sala de San Juan del Tribunal de Primera Instancia de Puerto Rico e incoar un recurso que se denominará "Procedimiento Especial" para que el tribunal determine, con prioridad a cualquier otro trámite y dentro de un término no mayor de veinte (20) días, si la magnitud de los cargos imputados requiere la suspensión de cargo y sueldo del Alcalde mientras se conducen los procedimientos administrativos ante la Comisión."*

Al evaluar la solicitud, el tribunal considerará lo siguiente:

*"(1) Si los hechos imputados al Alcalde demuestran una administración corrupta, fraudulenta e irresponsable o el abuso de autoridad;*

*(2) el historial administrativo previo del Alcalde;*

*(3) la notoriedad o conocimiento público que se le imputa al Alcalde previo a la presentación de los cargos;*

*(4) la certeza o peso de la prueba según surja de los informes investigativos sobre los hechos que dieron lugar a la querella;*

*(5) la urgencia de tomar medidas que protejan los bienes municipales, o la vida y salud de los ciudadanos,*

*y (6) la íntima vinculación de los hechos imputados a la administración del municipio."*

Cualquier Alcalde contra el que se emita una resolución suspendiéndolo de cargo y sueldo mientras se conduzcan los procedimientos administrativos ante la Comisión, podrá solicitar la revisión de la misma ante el Tribunal Supremo mediante *certiorari*, dentro de un término no mayor de diez (10) días contados a partir del archivo en autos de copia de la notificación de dicha resolución.

Salvo que el tribunal emita una orden o resolución para paralizar los procedimientos administrativos ante la Comisión, la radicación de un Procedimiento Especial y su posterior revisión por el Tribunal Supremo no impedirá la continuación de los mismos.

La disposición transcrita no establece la naturaleza de la vista para considerar los criterios anteriormente citados. Entendemos que son aplicables los pronunciamientos del Tribunal Supremo de Puerto Rico en *U. Ind. Emp. A.E.P. v. A.E.P.,* 146 D.P.R. 611, 617-619 (1998). En lo que concierne a la obligación del Estado de conceder una vista informal previa al despido y en cuanto a la naturaleza de la misma, nuestro más Alto Foro expresó:

*"El debido proceso de ley, en su modalidad procesal, exige que el Estado lleve a cabo un procedimiento justo y equitativo al momento del Estado intervenir con el interés propietario de una persona, como lo es la retención de un empleo protegido por ley o cuando exista una expectativa de continuidad en el mismo. Board of Regents v. Roth, supra; Orta v. Padilla Ayala, 131 D.P.R. 227 (1992).*

*Como corolario del derecho constitucional a un debido proceso de ley, el Tribunal Supremo de Estados Unidos en Cleveland Board of Education v. Loudermill, supra, reconoció el derecho de aquellos empleados públicos poseedores de un interés propietario en sus puestos a ser notificados de los cargos en su contra y a la celebración de una vista informal previa a su despido. Dicha norma ya había sido adelantada por el Tribunal Supremo federal en Mathews v. Eldridge, supra, y por este Tribunal en Vélez Ramírez v. Romero Barceló, supra. En Loudermill se estableció la naturaleza de la notificación y de la vista informal. Veamos.*

*Respecto a la notificación de la vista, en Loudermill se indicó que el empleado tiene derecho a que se le notifique, oralmente o por escrito, de los cargos en su contra. Id., pág. 545. En lo referente a la vista informal previa al despido, se señaló que su propósito consiste en evitar que la agencia administrativa tome una decisión errónea privando así a una persona de su sustento diario. Id., pág. 543. La vista no debe ser formal, extensa o elaborada. Id., pág. 545. Se le debe conceder al empleado la oportunidad de responder a los cargos en su contra y permitir que explique personalmente o por escrito las razones por las cuales, según él, no debe ser disciplinado. Id., pág. 546. La vista debe servir como un escrutinio mínimo inicial para determinar si existe una justificación razonable para creer que los cargos contra el empleado son ciertos, y que el curso de acción específico a seguirse está justificado. Helton v. Clements, 832 F.2d. 332 (5to. Cir. 1987).*

*...*

*Esta Curia, en Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990), acogió lo resuelto por el Tribunal Supremo de Estados Unidos en Cleveland Board of Education v. Loudermill, supra. Posteriormente, en Marrero Caratini v. Rodríguez, 138 D.P.R. 215 (1995), este Tribunal reiteró los componentes básicos de la vista informal previa al despido de un empleado público para satisfacer el debido proceso de ley, a saber: (1) una notificación de los cargos administrativos contra el empleado; (2) una descripción de la prueba con la que cuenta el patrono, y (3) una oportunidad para que el empleado exprese su versión de lo sucedido.*

*Acerca de la naturaleza de la vista informal, también hemos señalado que la vista informal previa a la destitución de un empleado es el primer escalón procesal en el cual ambas partes expresan de manera informal*

*los cargos y posibles defensas que podrían ser utilizadas posteriormente ante el foro apelativo correspondiente. Sostuvimos, además, que a menos que la ley orgánica o el reglamento de la agencia concernida conceda mayores garantías procesales, la vista informal no establecerá procedimientos de descubrimiento de prueba, ni vistas adversativas formales, ni concederá al empleado el derecho a confrontar toda la prueba en su contra."* Id.

Dichas salvaguardas son suficientes para privarle de empleo y sueldo a un alcalde, mediante el Procedimiento Especial consignado en el Artículo 18.006, *supra*. En el caso de título el peticionario tenía un interés propietario en continuar en su puesto de Alcalde. Ello así, se activa la protección constitucional del debido proceso de ley y nos corresponde evaluar si se cumplió con éste para privarlo de su interés propietario. Veamos.

El peticionario fue notificado de los cargos en su contra y de la celebración de una vista informal. El peticionario tuvo la oportunidad de responder a los cargos en su contra y explicar extensamente las razones por las cuales no debía ser suspendido En el caso de marras se cumplió con el escrutinio mínimo para determinar que existía una justificación razonable para creer que los cargos contra el peticionario eran ciertos y procedía su suspensión de cargo y sueldo. No podemos perder de perspectiva que esto es una suspensión temporera mientras se conducen los procedimientos ante la Comisión y hasta que se resuelva definitivamente la querella. En la Comisión se le concederá al peticionario una vista adversativa plenaria donde se le permitirá confrontar toda la prueba, contrainterrogar testigos y un adecuado descubrimiento de prueba. Concederlos en esta etapa, tendría el efecto de transferir las funciones de la Comisión al Tribunal. De no estar conforme con la decisión final de la Comisión, tendría derecho a recurrir a este Foro mediante recurso de revisión. Además, la pretensión del peticionario desvirtuaría el propósito y la naturaleza expedita del Artículo 18.006 de la Ley Núm. 81, *supra*. Por lo tanto, debemos concluir que la suspensión del peticionario fue conforme al debido proceso de ley.

De otra parte, de los criterios consignados en el Artículo 18.006 de la Ley Núm. 81, *supra*, surge que el tribunal evaluará *"[s]i los **hechos imputados** al Alcalde demuestran una administración corrupta, fraudulenta e irresponsable o. el abuso de autoridad; ... [y]... la íntima vinculación de los **hechos imputados** a la administración del municipio."* Art. 18.006 (1) y (6) de la Ley Núm. 81, *supra*. Además, se considerara *"la certeza o peso de la prueba **según surja de los informes investigativos** sobre los hechos que dieron lugar a la querella..."*. Art. 18.006 (4) de la Ley Núm. 81, *supra*.

De lo anterior no surge la necesidad de la celebración. de una vista evidenciaria donde el peticionario tenga la oportunidad de confrontarse con la prueba o contrainterrogar a los testigos de cargo. Tampoco surge la necesidad de un descubrimiento de prueba. De la disposición surge claramente que la evaluación del tribunal se fundamentará en los hechos imputados o según los mismos surjan de los informes investigativos.

Finalmente, acogemos lo expresado por el Tribunal recurrido en su dictamen, a las páginas 13-14:

*"El hecho de que un alcalde pueda invocar que la ocupación de su puesto obedece a la voluntad expresada por sus votantes, y a la confianza de los ciudadanos a quien sirve en el Municipio, elemento que particularmente distingue a éste de un empleado público de carrera para el asunto que nos ocupa, no requiere, a nuestro juicio, mayores garantías procesales de las que ya hemos concedido. El trámite según previsto y aquí delineado ofrece los elementos suficientes para hacer una determinación preliminar como la que se nos requiere, salvaguardando adecuadamente los intereses que al aquí perjudicado le asisten, al tiempo que previene el que pueda afectarse la efectividad de los procedimientos subsiguientes. En consecuencia, el debido proceso de ley no exige, a tenor con los derechos involucrados, y en prevención de una determinación errónea, más garantías de las ya otorgadas. El balance se inclina a conceder una mayor garantía al mínimo requerido por el querellante, pero sin el exceso exigido por el querellado.*

*Bajo los criterios expuestos, reconocemos al querellado, figura electa por el voto popular y dentro de un procedimientos judicial, el derecho a una vista previa, según aquí diseñada sin procedimientos de descubrimiento de prueba, ni vistas adversativas formales, ni el derecho a confrontar toda la prueba en su contra. No todo proceso tiene que contar con todas las garantías reconocidas por el debido proceso. Lo que sí requiere es la concesión de aquellas garantías necesarias en consideración a la etapa procesal en que se encuentre, atemperadas a la solicitud o al remedio que se pide, todo ello al amparo del debido proceso, en prevención a evitar una decisión errónea, salvaguardando adecuadamente los intereses involucrados...".*

Ahora nos corresponde determinar si al aplicar los hechos imputados a los criterios dispuestos en el Art. 18.006 de la Ley Núm. 81, *supra*, procedía la suspensión de cargo y sueldo al peticionario. Con ello, dispondremos de los últimos señalamientos de error conjuntamente.

## III

Como señaláramos, la Comisión presentó ante el tribunal recurrido una petición al amparo del Art. 18.006, *supra*, acompañada de la querella presentada, sus correspondientes anejos y ordenó que todo el expediente de la querella se presentara ante el Tribunal. En la querella se le imputaron al peticionario actos inmorales e ilegales en el desempeño de sus funciones como alcalde, que configuraban los delitos graves de Soborno, Preparación de Escritos Falsos, y cuatro violaciones a la Ley de Etica Gubernamental. La querella adujo expresamente, que estas actuaciones ameritaban su destitución como alcalde, pues eran contrarias a las normas mínimas de sana administración pública y altamente lesivas y detrimentales a los intereses del municipio.

Las imputaciones de delitos graves son de naturaleza sustancial y afectan los intereses públicos. Además, están íntimamente relacionados con la administración del cargo de alcalde. Los hechos imputados al peticionario tienden a demostrar abuso de la autoridad y una administración corrupta, fraudulenta e irresponsable. Además, existe una íntima vinculación entre los hechos imputados y la administración del municipio. Finalmente, dada la gravedad de las imputaciones formuladas contra el peticionario, se desprende *"...la urgencia de tomar medidas que protejan los bienes municipales...".* Véase Artículo 18.006 de la Ley Núm. 81, *supra*. Ello así, dada la naturaleza de los cargos imputados, la medida urgente que procedía para la protección del interés público, era la suspensión del peticionario de cargo y empleo mientras se conducen los procedimientos ante la Comisión.

Son pertinentes las expresiones del Foro recurrido a las páginas. 21-22 de su dictamen:

*"...La querella presentada en su contra, y que da lugar al inicio de todo proceso, aduce que los actos constitutivos de la misma se refieren a actuaciones ilegales e inmorales incurridas por el querellado en el desempeño de sus funciones como primer ejecutivo del aludido Municipio; que los mismos revisten tal seriedad y gravedad que le inhabilitan para continuar dirigiendo la administración municipal.*

*...*

*Por ser tan abarcador el ámbito de la gestión pública que realiza un alcalde, conforme lo ha establecido nuestro Tribunal Supremo, sus actuaciones inciden de manera relevante en la gestión ejecutiva municipal, en la legislativa y en la representación judicial y social del municipio que le corresponde realizar. Es imperativo entonces ofrecer la protección que persigue el estatuto manteniendo fuera del control de los asuntos fiscales y públicos al funcionario contra quien penden acusaciones y querellas íntimamente relacionadas con el inadecuado, ilegal, irresponsable y fraudulento manejo precisamente de los fondos y bienes públicos mientras se desempeña en el cargo."*

## IV
Por los fundamentos antes expuestos, denegamos la expedición del auto solicitado.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General